(42 South. 337.)

No. 15,696.

DURBRIDGE v. STATE.

(June 18, 1906. On the Merits, Nov. 12, 1906.)

1. APPEAL—TIME OF TAKING—REFUSAL OF NEW TRIAL.
    Plaintiff's suit against the state was brought under permission granted him by the General Assembly in Act No. 67 of 1898, under authority of article 192 of the Constitution. He appealed from an adverse judgment in the district court and died since the appeal was taken. Counsel for the state move to dismiss the appeal.

On Motion to Dismiss the Appeal.
2. SAME—MOTION TO DISMISS.
    The date from which the year given for taking an appeal runs (when a motion for a new trial was filed within the time granted by articles 537, 538, of the Code of Practice, to make such motions) is from the day when the court refuses the new trial. The litigant should not be made to suffer from the court's withholding its decision on the motion for a new trial. "Actus curiæ non gravabit."
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, § 1895.]

3. STATES — ACTIONS AGAINST — APPEAL — DEATH OF APPELLANT—EFFECT.
    The death during the pendency of his appeal of a person to whom permission was given by the General Assembly to sue the state does not cause the suit to abate on the ground that the right given to the plaintiff to sue was intended by it to be personal. It can be continued to judgment on the representatives of the plaintiff making themselves parties, leaving to the Legislature itself to determine what its intentions were. The object of the Legislature was to be fully informed as to the claim subjected to investigation in order to guide its own future action on the claim. To dismiss the appeal would be to defeat the object sought; to permit the investigation to continue to final judgment would leave the future action of the General Assembly open to its own discretion.
    Technical rules should not be applied to a case of this character.

On the Merits.
4. SAME—BURDEN OF PROOF.
    Article 192 of the Constitution makes it the duty of the General Assembly in granting a person (claiming that the state is indebted to him) the right to bring suit against it to require that the alleged creditor shall carry the burden of showing "that the claim sued upon is a legal valid obligation of the state, incurred in strict conformity to law, not in violation of the Constitution of the state or of the United States, and for a consideration." The plaintiff in the present suit has not met these requirements.

5. SAME—EVIDENCE.
    The ordinary rules of evidence find no application in such a suit. Plaintiff is required to go behind the certificates of engineers and commissioners and establish affirmatively and de novo the existence of the facts certified to therein.

6. SAME—ISSUE OF BONDS—CONSTITUTIONAL LAW.
    The General Assembly of 1868 in Act No. 67 authorized the creation of a debt by the state

of $135,000 for the improvement of the navigation of Red river. The act provided that bonds of the state should be delivered to the contractors for the work done; and under this contract such bonds should be payable out of any funds in the treasury not otherwise appropriated.

*Held* the act of the Legislature was unconstitutional, being violative of article 111 of the Constitution of 1868, which required that the General Assembly when contracting such a debt shall provide adequate ways and means for the payment of the principal and interest on the debt.

(Syllabus by the Court.) .

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Action by William Durbridge against the state. Judgment for defendant, and plaintiff appeals. Motion to dismiss denied, and judgment affirmed.

Girault Farrar, Gustave Lemle, Thomas Jones Kernan, and Hunter Collins Leake, for appellant. Walter Guion, Atty. Gen. (Milton Joseph Cunningham and Lewis Guion, of counsel), for the State.

NICHOLLS, J. The Attorney General and counsel for the defense move for the dismissal of the appeal taken in this case on the grounds:

First. That the appeal was taken too late, more than a year having elapsed after the judgment was signed before the appeal was taken.

Second. The plaintiff, William Durbridge, having died since the appeal was taken, the appeal should be dismissed, as the suit cannot be revived in the name of the legal representatives.

In the brief filed on behalf of the plaintiff, it is stated that the judgment rejecting plaintiff's demand was rendered on the 17th of October, 1903, and on the same day the judge signed the judgment: that on the 19th of October, two days after judgment was signed, and therefore within the three judicial days given by law (articles 557, 558, Code Prac.) to a party litigant in which to apply for a new

trial, plaintiff filed his application for a new trial, that on the 23d of June, 1904, the district judge overruled the motion for a new trial. On the 28th of April, 1905, within a year from the day on which the motion for a new trial was overruled, plaintiff applied for, and was granted, a devolutive appeal, returnable to the Supreme Court on the 15th of May, 1905. The transcript of appeal was filed in that court on the return day.

"The question for decision is whether the year in which plaintiff had to take an appeal commenced to run from October 17, 1903, the day after the judge signed the judgment, or from June 23, 1904, the day the judge overruled the motion for a new trial. If from the former, the appeal was taken too late; if from the latter, it was in time."

"Article 545, Code Proc., declares that the judge must sign all definitive or final judgments rendered by him, but he shall not do so until three judicial days have elapsed to be computed from the day such judgment was given."

"Article 557 declares that the court may revise their judgment by granting a new trial in the case hereafter provided. The party who believes himself aggrieved by the judgment given against him may, within three judicial days after such judgment has been rendered, pray for a new trial, which must be granted if there be good ground for the same, provided that said new trial be prayed for and passed before adjournment of court."

"Article 546 specially prohibited the signing of a judgment until after three judicial days had elapsed."

"Article 12 of the Civil Code declares that whatever is done in violation of a prohibitory law is null. The motion for a new trial having been overruled, that was the first day on which the judgment could have been legally signed. The judgment, therefore, as a matter of law, must be presumed to have been rendered on that day. Up to that day the signing was premature. Succession of

Gilmore, 12 La. Ann. 625; Converse v. Bloom, 20 La. Ann. 555."

"The appeal was taken within a year from the day, and was in time."

The state maintains that the delay within which the year for an appeal runs is not suspended or interrupted by an unsuccessful motion for a new trial. Code Prac. arts. 567, 593; Smith v. Vanhille, 11 La. 380; Mathison v. Field, 3 Rob. 45; Knox v. Duplantier, 21 La. Ann. 294; Hall v. Beggs, 17 La. Ann. 238; Beaird v. Russ, 32 La. Ann. 304; Beaird's Heirs v. Russ, 34 La. Ann. 315; Acts 1898, No. 163, § 5.

On the second branch of the motion to dismiss, the counsel for the state maintains that the present suit was brought under a permission granted by Act No. 67 of 1898, to Durbridge personally to do so; the act not providing that the right should descend or be transmitted to plaintiff's heirs or his estate.

That the privilege being in derogation of the state's sovereignty, it should be exercised only by those whom it was clearly intended should enjoy it. That the privilege is a personal one and died with the person to whom it was accorded. It was not transmissible.

Counsel cite 26 A. and E. Ency. of Law (2d Ed.) p. 487; Rose v. The Governor, 24 Tex. 504; Asbell v. State, 60 Kan. 51, 55 Pac. 338; Raymond v. State, 54 Miss. 562, 28 Am. Rep. 382; Davis v. Neligh, 7 Neb. 79; Bradford v. State, 7 Neb. 109; State v. White, 7 Neb. 113; State v. Lancaster County Bank, 8 Neb. 218; Chicago, M. & St. P. Ry. Co. v. State, 53 Wis. 509, 10 N. W. 560; Morgan v. Louisiana, 93 U. S. 217, 23 L. Ed. 860; Pickard v. Tennessee R. R., 130 U. S. 637, 9 Sup. Ct. 640, 32 L. Ed. 1051; Phœnix Ins. Co. v. Tennessee, 161 U. S. 177, 16 Sup. Ct. 471, 40 L. Ed. 660; Memphis & L. R. R. Co. v. Berry, 112 U. S. 617, 5 Sup. Ct. 299, 28 L. Ed. 831; Bernard v. Noel, 45 La. Ann. 1135, 13 South. 737; Succession of Durkin, 30 La. Ann. 669; Succession of Tugwell, 43 La. Ann. 879, 9

South. 499; Walton v. Booth, 34 La. Ann. 914; Chivers v. Rogers, 50 La. Ann. 58, 23 South. 100; State v. Jacobs, 50 La. Ann. 477, 23 South. 608.

Counsel say the title of the act, giving to plaintiff the right to sue, in its first section provides that:

"William Durbridge be permitted * * * to sue the state of Louisiana and to recover from the state the amount due him, or which may be adjudged as due him by the court taking cognizance of the suit. It nowhere provides for the prosecution of such a suit by, or for the account of, any other than William Durbridge."

### On the Motion to Dismiss.

Article 192 of the Constitution of 1898 provides that whenever the General Assembly shall authorize a suit against the state, it shall provide in the act authorizing the same that such suit be instituted before the district court at the state capital; that citation to answer such suit shall be served upon the Governor and the Attorney General; that the Supreme Court of the state shall have appellate jurisdiction in such suit, without regard to the amount involved; that the only object of such suit, and the only effect of the judgment herein, shall be a judicial interpretation of the legal rights of the parties for the consideration of the Legislature in making appropriations; that the burden of proof shall rest upon the plaintiff or claimant to show that the claim sued upon is a legal and valid obligation of the state, incurred in strict conformity to law, not in violation of the Constitution of the state, or of the United States, and for a valid consideration, and that all these things shall be affirmatively declared by the Supreme Court before any judgment is recognized for any purpose against the state.

The second section of Act No. 67 of 1898, granting William Durbridge the right to sue, is a copy of the article of the Constitution cited, mentioning the district court at the

state capital as the court in which the suit should be brought.

It was the manifest purpose of the General Assembly to have the facts and merits of the claim investigated by the Supreme Court in order to guide it in action for or against the claim which it contemplated taking later.

To dismiss the appeal would be to defeat the object of the statute and deprive the General Assembly of the information which it seeks for purposes of its own to obtain. To maintain the appeal, and pass upon the issues involved in the case, would leave that body free to take such action as, in its opinion, judgment, and discretion, it would deem proper.

The second branch of the motion deals with the intention of the General Assembly in entering into the investigation. That question is one which the General Assembly rather than this court is the proper tribunal to decide. The duty delegated to us is to pass upon the claim, not upon the persons who may or may not be entitled to it. Any judgment which we might render in the case would leave that issue open. We are scarcely in a position to judge of the intentions of the General Assembly when that body is in existence, and that question is to be passed up by itself hereafter.

The same line of reasoning which impels us to maintain the appeal on the second branch of the motion, applies to the first ground for dismissal assigned, but we have no hesitation in saying, even if the case was one between private parties, that the motion would not prevail. We think the action of the district court in holding back for decision the motion for a new trial postponed to the date of the action on that subject the date from which the time for taking the appeal should run. It has several times been held that where a judge has refused to grant an appeal, and has only granted one at the end of a proceeding by mandamus to compel

him to do so, the time intervening between the date of the application for an appeal and the order of appeal should not be counted in determining whether the legal time for the granting of the appeal has expired or not. The same rule should govern in a case like this. The litigant should not be made to suffer for the inaction of the judge. "Actus curiæ non gravabit."

The motion to dismiss is denied.

### On the Merits.

The present action was brought by the plaintiff under an authorization granted him so to do by Act No. 67 of 1898.

The act declares that he " 'claims to own and hold' in his possession certain claims against the state of Louisiana, based upon a certain alleged contract entered into by the state of Louisiana on the one part, represented by William S. Mudgett, chairman of the board of commissioners appointed under, and by virtue of, an act entitled 'An act to provide for the improvement and navigation of Red river,' approved September 8, 1868; and Andrew S. Oliver and George Alban of the other part." It declares (in conformity with article 192 of the Constitution of 1898) that the one object of this suit, and the only effect of the judgment therein, shall be a judicial interpretation of the legal rights of the parties for the consideration of the Legislature in making appropriations; that the burden of proof shall rest upon the plaintiff or claimant to show that the claim sued upon is a legal and valid obligation of the state, incurred in strict conformity to law, not in violation of the Constitution of the state or of the United States, and for a valid consideration, and that all these things shall be affirmatively declared by the Supreme Court before any judgment is recognized for any purpose against the state.

The district court rendered judgment in

favor of the state of Louisiana, rejected plaintiff's demand, and dismissed his suit.

The reasons assigned for this judgment were: First, that article 111 of the Constitution of 1868 is violated by Act No. 59 of 1868 on which the contract was founded; second, that Act No. 67 of 1898 is a special act which does not contain the recital required by article 50 of the Constitution of 1898.

It would have been error to have made the rejection of plaintiff's demand, and the dismissal of his suit rest upon the second ground assigned. The right of the General Assembly to waive its right of exemption from suit, and to grant permission to sue, is not derived from article 192 of the Constitution of 1898. It antedated that Constitution. The article in question merely fixed certain features of the demand, and of the suit, and of the effect of the judgment when rendered. The statute of 1898 was not a special or local "law." It was simply a special "act," authorizing the bringing of the suit. It needed no notice to have been given to authorize its enactment. It was uncontrolled as to its own course. Besides, reference to article 48 of the Constitution was clearly an error as to the number of the article intended to be recited.

The contract on which plaintiff declares, was based upon Act No. 59 of 1868, p. 72, entitled "An act to provide for the improvement of the navigation of Red river."

The first section declares:

"That the navigation of Red river shall be improved by filling up at a proper point on Old river, so as to prevent the waters of Red river from running in Toni's Bayou during low-water season, and by removing logs, trees, stumps, and other obstructions to the navigation of Twelve Mile Bayou, Red Bayou, Polson's Bayou, Polson Lake, and other lakes above Shreveport, and also by making cut-offs on said bayous at different bends."

Section 2:

"That in order to have the above works completed during the present low water, William S. Mudgett, Charles W. Keeting, M. H. Crowell, be and are hereby appointed commissioners in behalf of the state, and hereby authorized to employ a competent engineer, and to have him without delay examine said work, and to prepare plans and specifications of the work to be done, and to make the same so as to show the proposed and necessary work in convenient sections, with estimates of the just and proper cost of each section and of the whole work."

Section 3:

"That as soon as estimates, plans and specifications are prepared, said commissioners shall and they are hereby authorized to contract in the name of the state of Louisiana with a competent person or persons to do said work according to such plan and specifications, payable in installments at the completion of each section and upon the certificates of said commissioners that the section has been completed according to contract."

Section 4:

"That the total cost of said improvements shall not exceed the sum of one hundred and thirty-five thousand dollars, for which the contractor or contractors shall bind themselves to receive the bonds of the state of Louisiana, payable to bearer at twenty years after the date of the contract, and bearing seven and thirty-hundredths per centum interest per annum."

Section 5:

"That the Governor of the state of Louisiana shall cause to be prepared and printed the number of bonds necessary for delivery to the contractor or contractors on presentation of the certificate of said commissioners that they are entitled to the same, which bonds shall be for the sum of one thousand dollars each, with twenty coupons for the annual interest appended thereto, and which said bonds shall have been signed by the Governor and countersigned by the Secretary of State under the seal of the state, the Auditor of Public Accounts and State Treasurer, they shall be delivered to the Auditor, and issued by him to the contractor or contractors upon the presentation of aforesaid certificates of the said commissioners."

Section 6:

"That at the maturity of said coupons of interest and bonds, respectively, the State Treasurer be and he is hereby authorized and required to pay the same to any bearer thereof, out of any funds in the treasury of the state not otherwise appropriated."

Section 7:

"That as soon as a Board of Public Works may be created for this state and the members thereof shall qualify and organize as may be

provided by law, the commissioners appointed by this act shall turn over to such board of public works, whatever they may have done under and according to the requirements of this act, and such board of public works shall take possession and control of such works, and contract for the making the same, if not already under contract; and if already under contract, shall superintend and direct the same according to the contract, and do all things required to be done by said commissioners by this act."

Section 8:

"That this act shall take effect from and after its passage."

In the petition filed by the plaintiff, he averred that the state was indebted to him in the sum of $135,000 with 7½ per cent. interest thereon from the 10th day of September.

He then referred to Act No. 59 of 1868, and recited its different sections. He then averred:

That the three commissioners named in section 2 of the act selected as engineer a competent engineer and surveyor to examine the work contemplated to be done under the act, prepared plans and specifications, made an estimate of the cost, and divided the work into four sections, as required by said section 2 of said act, viz.:

First section cost................ $ 50,000 00
Second section cost............... 42,000 00
Third section cost................ 22,000 00
Fourth section cost............... 21,000 00

Total ......................$135,000 00

That on the 10th day of September, 1868, by notarial act, passed before Edward R. Hogan, notary public, in New Orleans, Louisiana, the commissioners mentioned in said Act No. 59 of 1868, entered into a contract with Andrew J. Oliver and George Alban to perform and complete in a good, sufficient, and workmanlike manner all the works mentioned in and required by Act of 1868, and to furnish all the materials and labor for the same as according to the specifications attached to and made part of the contract, said

specifications having been prepared by said engineer McCulloh, the engineer appointed by said commissioners. By the terms of said contract the state of Louisiana, represented by said commissioners, agreed and bound itself to pay to said Oliver and Alban, in installments at the completion of each section, and upon the certificates of said commissioners, that the section had been completed according to contract the following sums, viz.:

Upon the completion of the first section the sum of $50,000.

Upon the completion of the second section the sum of $42,000.

Upon completion of the third section the sum of $22,000.

Upon completion of the fourth section the sum of $21,000.

All of said payments to be made in bonds of the state of Louisiana, as provided for in the fourth and fifth sections of said Act. No. 59 of 1868; all of which will more fully appear by a certified copy of said notarial contract hereto annexed and made part hereof, as fully as if copied in extenso, marked. "Exhibit A."

That, upon the 18th of September, 1868, by an act passed before said notary Hogan, the said Oliver and Alban conveyed and transferred to petitioner an undivided one-third interest in and to said contract.

That notice of this transfer was given to the state of Louisiana by serving a certified copy of this act upon the Auditor of the state about five or six days thereafter.

That said contract entered into with the state of Louisiana, as aforesaid, was honestly and faithfully carried out in all of its details, petitioner advancing all necessary funds, and steamboat which was one of the chief instruments in the execution of the contract; and the certificates of the completion of sections 2, 3, and 4 of the work were given by the engineer and commissioners, as re-

quired by said section 3 of said Act No. 59 of 1868 to petitioner, and were still in his possession. That the three certificates signed by the engineer were approved by the three commissioners named in section 2, dated, respectively, at Shreveport, La., October 17, 1868, November 7, 1868, and December 3, 1868. That as soon as the board of public works was appointed under the General Assembly, the commissioners named in section 2 of said Act of 1868, under section 7 of said act, turned over or transferred to said board of public works, as their successors in office, the completion of the contract hereinbefore mentioned; section 1 called for by said contract and specifications not having as yet been completed.

That the board of public works duly elected an engineer.

That on March 20, 1870, the said engineer issued to petitioner a certificate to the effect that the first section of the work to be executed under the contract entered into on September 10, 1868, between the commissioners authorized by Act No. 59 of 1868, and said Oliver and Alban, had been completed in full compliance with specifications, plans and terms of the contract estimated at $50,-000; and that the certificate was issued for the final completion of the contract made part hereof as fully as if copied in extenso herein, and marked "Exhibit H."

That by an act of procuration passed before said notary E. R. Hogan, on July 9, 1869, the said Oliver and Alban appointed as their agents and attorneys in fact Messrs. Woolridge and John W. Thomas, or either of them, with full power and authority to act for them, and in their name and behalf, and to conduct, manage, and transact all and singular the business matters of said Oliver and Alban so far as they relate to their interest in the contract for the improvement of the navigation of Red river, as per contract entered into between them and the commissioners appointed for that purpose on behalf of the state of Louisiana, before said notary E. R. Hogan on September 10, 1868—the said Oliver and Alban binding themselves to ratify all that said Woolridge and Thomas, or either of them, or their substitutes, should lawfully do in the premises, all of which will more fully and at large appear by a certified copy of said act of procuration, hereto annexed and made part hereof, as fully as if copied in extenso herein, and marked "Exhibit I."

That on February 6, 1871, Mr. A. J. Oliver was substituted to act for George Alban under the above power of attorney by J. W. Thomas, the agent and attorney in fact of said Alban, under the aforementioned act of procuration, all of which will more fully and at large appear by the power of substitution executed by said J. W. Thomas, and indorsed on the copy of said act of procuration hereto annexed as "Exhibit I."

On the 22d day of August, 1872, by an instrument under private signature, the said A. J. Oliver, acting in his own behalf, and as agent of said George Alban, transferred and conveyed unto petitioner all the right, title and interest of said Messrs. Oliver and Alban in and to the aforesaid contract with the state of Louisiana for the improvement of the navigation of Red river, entered into on September 10, 1868, as aforesaid; all of which will more fully and at large appear by the said instrument.

That having acquired all the interest of said Oliver & Alban in and to the said contract with the state of Louisiana, and having completed all the work called for and contemplated in and by said contract, in accordance with the plans and specifications and the terms of said contract, and being in possession of the certificates properly signed in accordance with the provisions of Act 59 of 1868, showing the final completion of all of said work, he was entitled to recover

herein judgment against the state of Louisiana, for the sum of $135,000, payable in 20-year bonds of the state, dated September 10, 1868, and bearing $7^{30}/_{100}$ per cent. per annum interest, and the period of maturity of said bonds having long since elapsed, and the state having failed to deliver to petitioner the said bonds in time, petitioner was now legally and equitably entitled to recover an absolute judgment against the state of Louisiana for the full sum of $135,000, with $7^{30}/_{100}$ per cent. per annum interest thereon from September 10, 1868.

That on his receiving the certificate of the engineer and approval by the three commissioners, as required by section 5 of Act No. 59 of 1868, he duly presented same to the Auditor of the state of Louisiana and demanded the 42 bonds of $1,000 each, which the certificate called for, and which were to be issued by the Auditor upon the presentation of said certificates, and was informed by said Auditor that the Governor of the state had refused to sign the bonds, although he was required to do so by section 5 of said Act No. 59 of 1868. That petitioner and his associates thereupon brought a suit for mandamus against the Governor to sign the bonds. That the lower court made the mandamus peremptory; but, on appeal to the Supreme Court, judgment of the lower court was reversed, and the mandamus was denied, upon the ground that the writ of mandamus would not lie to compel the chief executive officer of the state to perform any act coming within the range of his duty as Governor. That during this litigation, petitioner continued to advance the necessary money to complete the contract aforesaid, and fulfilled the said contract.

That on receipt of the certificates for the first, third and fourth sections, properly signed and attested as required by said Act No. 59 of 1868, he again presented all of said certificates to the Auditor of the state of Louisiana, and again demanded the bonds called for by said certificates, and in each instance was informed by said Auditor that the bonds had not been signed and delivered to him by the Governor, as required by section 5 of said Act No. 59 of 1868, and that he could not therefore deliver them to petitioner

That as there was no legal means to compel the Governor to sign the bonds, he had no other recourse except to sue the state of Louisiana for the amount due him under the contract, and this he could not do without first obtaining the consent of the General Assembly of the state of Louisiana. That he had applied to almost, if not every General Assembly, since the Supreme Court refused to mandamus the Governor to sign the bonds, for authority to sue the state as aforesaid, but petitioner failed to receive said permission until the General Assembly of the state of Louisiana passed Act No. 67 of 1898, being act under which petitioner was bringing the present suit.

That at the time he became interested in said contract with the state of Louisiana, he was a prosperous wholesale merchant in the city of New Orleans and owned valuable real estate in the shape of cotton plantations and houses and lots. That petitioner believed that as soon as section 2 was completed (this was the first section undertaken) he would receive the bonds to be issued in payment of said section, and would be able to dispose of them, and with the proceeds finish another section, but, owing to the Governor failing to sign the bonds, as aforesaid, petitioner was forced to protect himself to advance the necessary money to complete the entire contract; and, in order to do so, was obliged to dispose of his business and property for cash, and consequently he was to-day, in his extreme old age, reduced to poverty and dependence upon others.

That the claim sued upon herein was a legal and valid obligation of the state of

Louisiana incurred in strict conformity to law, and is not in violation of the Constitution of the United States or of the state of Louisiana, and that petitioner's interest therein was acquired for a valid consideration.

That the obligation of his contract rights with the state of Louisiana was protected from impairment by the terms of article 5 of the Constitution of the United States and the fourteenth amendment of said Constitution.

In view of the premises, and the annexed affidavits, he prayed that the Governor of the state and the Attorney General be cited, that petitioner recover judgment against the state of Louisiana in the sum of $135,000, with $7^{30}/_{100}$ per cent. per annum interest thereon, from the 10th day of September, 1868, until paid, and petitioner prayed for such other further relief as in law he might be entitled to, and as to your honor may seem equitable and just.

Defendant excepted that plaintiff was not authorized to institute the suit, as the notice required by article 50 of the Constitution had not been given, and that plaintiff's petition disclosed no cause of action; that the contract declared on required payment to be made in bonds, and no judgment could be rendered in favor of the plaintiff as he prayed for a moneyed judgment, and there was no law authorizing such a payment. That all authorization to issue the bonds had been withdrawn and repealed, and the issuance of bonds was prohibited by the Constitution. Under benefit of the exceptions, defendant answered, pleading the general issue. It subsequently filed a supplemental answer, in which it was alleged that the claim sued upon was not a legal and valid obligation of the state; that it was not incurred in strict conformity with the law and with the Constitution of the state and of the United States, nor for a valid consideration; that Act No. 59 of 1868, under

which the contract was made was unconstitutional, because it undertook to create a debt against the state by the issuance of state bonds, without providing for the payment of said debt, in direct violation of article 111 of the Constitution of the state of 1868; that the commissioners appointed by said act did not have the power to contract for the improvement of Red river, under section 3, until after the plans and specifications had been made therefor by the engineer appointed by them under section 2, after he had examined the work and prepared the plans and specifications in accordance with section 2; that the contract was illegally made two days after the act was approved, and before the engineer, if any, was appointed by the commission could possibly have examined the work which was several hundred miles away from New Orleans where the contract was made, and therefore the obligation if any, was not incurred in strict conformity with the law; that the dates show that the whole transaction was a fraudulent scheme to obtain the bonds of the state without adequate consideration; that the act was approved September 8, 1868, and on September 10th the contract with Albans & Oliver was signed; that on the 8th they transferred one-third interest to plaintiff, for which he was to advance $3,000 to be used in doing the work; that 29 days thereafter, on October 17th, a certificate was issued showing that the second section of the specifications of the work had been completed and that the contractors were entitled to $42,000; that it was absolutely impossible to do work in that short time worth anything like the amount contracted for; that no work of any consequence was done, and the navigation of the river was not improved; that 21 days thereafter, on November 7, 1868, a certificate was issued showing that the third section of the specifications of the work had been complet-

ed, and that the contractors were entitled to $22,000, and it was equally impossible to have done that amount of work in so short a time, and no work of any consequence was done, and what little was done did no good in improving the navigation of the river; that on December 3; 1868, 25 days thereafter, a certificate was issued, showing that the fourth section had been completed, and that the contractors were entitled to $21,000; that in less than two months and a half after Albans and Oliver had made arrangements to get the money to begin the work with, they claimed to have earned $85,000, in improving the navigation of that part of Red river between the Arkansas state line, and the mouth of Twelve Mile Bayou, which is about 12 miles above Shreveport; that the steamboat men navigating in that part of the river about that time and afterwards saw no improvement in the navigation from the pretended work, most of them never saw it going on, nor heard of it being done, and all of them found the same difficulties and obstructions to navigation that had previously existed; that according to the contract the entire work was to be completed on or before January 1, 1869; that while plaintiff does not pretend that there was any extension of the contract, and the contract was not performed within the time stipulated, he was seeking to show that part of the contract was performed more than a year after the time fixed therein on an authentic certificate of the engineer without the approval of the board of public works, whose approval was a condition precedent for the issuance of the bonds; that for this additional reason this part of the claim was not issued in strict conformity with the law; that the printed reports of the state engineers to the subsequent Legislature show that this part of the work was never done by plaintiff and his co-obligators, Albans & Oliver, but that they abandoned the work, and other parties undertook to do this same work under this same act; that Albans & Oliver never did the work contemplated by the first section of the specifications; that for all the foregoing reasons there was no valid consideration for the debt claimed by plaintiff; that under the act of 1868 the contractors were to be paid in bonds which were not worth over 25 cents on the dollar, and no one now has authority to issue bonds.

In view of the premises, respondent prayed that he be allowed to file this amended and supplemental answer; that plaintiff's demand be rejected, and his suit dismissed at his costs, and for general relief.

It also filed a plea of res judicata, alleging that all the issues presented in plaintiff's petition have already been decided and adjudged against him. In the suit of State ex rel. Eager, Ellenman & Co. v. Clinton, No. 6,026, on the docket of the superior district court for the parish of Orleans with which the suit of this plaintiff against same defendant No. 6,021 on the docket of the same court, was consolidated and tried by the proof adduced and the judgment rendered and affirmed by the Supreme Court, as reported in 28 La. Ann. p. 52, all the issues here presented were found and adjudged against plaintiff. In view of the premises defendant interposes the plea of res judicata, reserving and reiterating all other exceptions and defenses.

The plaintiff conducted his case in the district court as if it were an ordinary suit between private litigants to be governed, and decided by the application to his demand of the general rules as to the admissibility of evidence; the sufficiency and weight of evidence and as to which of the parties litigant carried the burden of proof. He overlooked the fact that the suit was brought before the court under exceptional conditions which the state was free to impose, and to which he was bound to conform, and that the court itself

under the statute was required to make special findings, and render a special judgment similar to that referred to in the case of Lord Cecil v. Board of Liquidation, 30 La. Ann. 35. The state required the plaintiff to go behind the certificates of engineers and commissioners, and establish affirmatively through evidence adduced on the trial, all the facts connected with his claim which were necessary to support and make it good. We have examined the evidence with care and find (independently of any question as to the constitutionality of the alleged debt due by the state to him) that defendant has utterly failed to establish the claim set up. The state, on the contrary, has itself, through her counsel made a searching inquiry into the facts connected with the subject-matter, and substantially disproved the right of either Oliver & Albans or the plaintiff to recover anything from it.

The plaintiff is an old man, and the transaction on which he rests his demand occurred many years ago. Most of the parties having knowledge of them have died, and he has presented himself before the court, relying upon certificates to which, under the law of this case, we could give little, if any, probative force, and upon his own memory unsupported by vouchers, which he declares were all destroyed by fire.

The existence or character of the different vouchers is not shown. It is quite possible that the plaintiff may have suffered in the dealings between himself and Oliver and Albans, but that matter is not before us for investigation. Counsel evidently did not have the material wherewith to prove up the plaintiff's claim. The record is such that they are forced to rely more upon loose general expressions, drawn from the state's witnesses than upon anything disclosed by their own.

This suit is not brought upon a quantum meruit, but, if upon a contract quantum meruit, the testimony is not such as would justify us in rendering a judgment for any particular amount based upon any particular work. We do not think it was the object of the General Assembly to have the court recite the particular testimony which was introduced on the trial; but, after examination, to simply announce the conclusions which it reached based upon that evidence. We think it proper, however, to announce such conclusions, though those on the constitutional question raised be such as would withdraw from the claim the constitutional right of the General Assembly to grant plaintiff any relief. Such is in fact the result of our examination of that question. Article 111 of the Constitution of 1868, which was the Constitution in force at the time of these various transactions, declared that:

"Whenever the General Assembly shall contract a debt exceeding in amount the sum of one hundred thousand dollars, unless in case of war to repel invasion or suppress insurrection, it shall in the law creating the debt provide adequate ways and means for the payment of the current interest and of the principal when the same shall become due, and the said law shall be irrepealable until principal and interest be full paid, or unless the repealing law contain some adequate provision for the payment of the principal and the interest of the debt."

In the present instance there was no provision made in the statute for the payment of the debt of $135,000 contemplated by it. It authorized the issuance of bonds, but while the bonds furnished would recognize the debt when given, that fact would certainly not pay it. The declaration made in the act that the debt should be paid out of any funds in the treasury not otherwise appropriated did not provide adequate money for the payment of the debt and interest.

There might never be funds "not otherwise appropriated" in the treasury. The existence of this general possibility of payment of such funds, should any be in the

treasury, would in no manner do away with the right of the Legislature to make appropriations which would cut off all possibility of payment from such a source, and leave the debt floating and unsecured.

The very object of article 111 of the Constitution was to guard against the creation of debts of that character and to check extravagant legislation. The purpose was to have every debt created provided for by a fixed appropriation in which the creditor would have a vested right, securing him against its diversion. The statute in question did not .furnish the creditor with substantial, adequate means to payment, but provided him simply with a mere hope. The bonds—the evidence of debt—which were to be furnished him would in his hands be simply instruments hawked about the streets to the great injury of the state's credit. Lord Cecil v. Board of Liquidation, 30 La. Ann. 41.

We are of the opinion that the judgment of the district court is correct, and it is hereby affirmed.