**MISSISSIPPI RIVER FUEL CORPO-RATION et al., Appellants,**

v.

**Roland COCREHAM, Collector of Revenue of the State of Louisiana, Appellee.**

No. 23402.

United States Court of Appeals Fifth Circuit.

Sept. 13, 1967.

Clyde R. Brown, C. McVea Oliver, Monroe, La., Clarence L. Yancey, Thomas A. Harrell, Shreveport, La., for appellants.

Edwin L. Weisl, Asst. Atty. Gen., Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., for the United States as amicus curiae in support of appellant.

Emmett E. Batson, Chapman L. Sanford, Cyrus A. Greco, Baton Rouge, La., for appellee.

George C. Schoenberger, Jr., Joseph G. Hebert, Jess Johnson, Jr., New Orleans, La., amici curiae on the merits.

Before RIVES and WISDOM, Circuit Judges, and CONNALLY, District Judge.

WISDOM, Circuit Judge:

The substantive issue for decision is the right of the State of Louisiana to exact severance taxes on oil and gas produced under a lease to a private corporation when the land in question is part of a federal enclave, Barksdale Air Force Base in Bossier Parish, Louisiana. The district court held that the State may exact such taxes. 247 F. Supp. 819. We reverse. When the United States acquired title to the land, it acquired "exclusive jurisdiction" over the property, precluding the State's levying and collecting a tax on oil and gas ·severed from the land by a third party under a lease from the United States. Article I, Section 8, Clause 17, United States Constitution; Humble Pipe Line Co. v. Waggonner, 1964, 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed.2d 782.

In 1930, the United States, with the consent of the Louisiana legislature,[1] acquired from the state the 22,000 acres that comprise the Barksdale base. The defendant, in his capacity as Collector of Revenue, collected the Louisiana severance tax on oil and gas that the Mississippi River Fuel Corporation produced at Barksdale during September, 1963. The Company paid the tax under protest and brought this action in the United States District Court for the Eastern District of Louisiana to recover the amount so paid.[2]

Before reaching the substantive issue, however, we must decide whether the Eleventh Amendment withdraws jurisdiction over this suit from the federal courts.

I.

Under the Eleventh Amendment, private litigants may not sue a state in federal court without the state's consent.[3] Smith v. Reeves, 1900, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140; Hans v. State of Louisiana, 1890, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842.

A. In the district court, the Collector conceded jurisdiction and defended the case on the merits, but now he urges that this suit is one against the State of Louisiana and that Louisiana has not consented to be sued in a

---

1. See Act 4 of 1930; Act 12 of 1892, subsequently amended by Act 31 of 1942 and LSA–R.S. 52:1.

2. The Company also paid subsequent severance taxes under protest. The parties have agreed to abide by this court's decision with regard to all such taxes subsequently paid.

3. The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

federal court. The Collector may question this court's jurisdiction on the basis of the Eleventh Amendment although he did not raise the issue below. Ford Motor Co. v. Treasury Dep't, 1945, 323 U.S. 459, 467, 65 S.Ct. 347, 89 L.Ed. 389. Moreover, the Collector's failure to challenge the district court's jurisdiction cannot itself constitute the requisite consent of the state; it is conceded that the Collector has no authority to waive the state's immunity from suit.

B. The Company contends that this suit has been brought against the Collector as an individual and not against the State of Louisiana. Cf. Atchison, T. & S. F. Ry. v. O'Connor, 1912, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436. It also contends that Louisiana has consented to be sued for tax refunds in the federal courts. Since we find the latter contention dispositive of the issue,

we do not decide whether this suit could be maintained against the Collector as an individual.

Act 330 of 1938, LSA–R.S. 47:1576, provides that persons wishing to contest the legality of state taxes paid under protest shall have "a legal remedy and right of action in any state or federal court having jurisdiction of the parties and subject matter * * *." [4] At the time the legislature enacted this statute, Article III, Section 35, of the Louisiana Constitution limited the legislature's power to waive the state's immunity from suit in two ways. It required the legislature to "provide a method of procedure and [to specify] the effect of judgments which may be rendered" whenever the legislature authorizes a suit against the state. In 1946 and again in 1960, however, Article III, Section 35, was amended. The question is whether the 1946 and 1960

---

4. The portions of Act 330 that are relevant to this case read:

"AN ACT—To carry into effect Section 18, Article X of the Constitution of Louisiana, and to provide against the issuance of process to restrain the collection of any tax and for a complete and adequate remedy for the prompt recovery by every taxpayer of any illegal tax paid by him.

"Section 1. Be it enacted by the Legislature of Louisiana, That no court of this State shall issue any process whatsoever to restrain the collection of any tax imposed by the State of Louisiana, or by any political subdivision of the State of Louisiana, under authority granted to it by the Legislature or by the Constitution.

"Section 2. (a) A right of action is hereby created to afford a remedy at law for any person aggrieved by the provisions of this Act; and in case of any such person resisting the payment of any amount found due, or the enforcement of any provision of such laws in relation thereto, such person shall pay the amount found due by the officer designated by law for the collection of said tax and shall give the officer notice, at the time, of his intention to file suit for the recovery of the same; and upon receipt of such notice, the amount so paid shall be segregated and held by the officer designated by law for the collection of the tax for a period of thirty (30) days; and if suit be filed within such time for the recovery of such amount, such funds so segregated shall be further held, pending the outcome of such suit. If the person prevails, the officer designated by law for the collection of the tax shall refund the amount to the claimant, with interest at the rate of 2% per annum covering the period from the date said funds were received by the officer designated by law for the collection of said tax to the date of refund.

"(b) This Section shall afford a legal remedy and right of action in any State or federal court having jurisdiction of the parties and subject-matter, for a full and complete adjudication of any and all questions arising in the enforcement of this Act, as to the legality of any tax accrued or accruing or the method of enforcement thereof. * * *

"(c) This Section shall be construed to provide a legal remedy in the State or federal courts, by action at law, in case such taxes are claimed to be an unlawful burden upon interstate commerce, or the collection thereof, in violation of any Act of Congress or the United States Constitution, or the Constitution of the State of Louisiana, or in any case where jurisdiction is vested in any of the courts of the United States * * *."

amendments withdrew the consent to suit in federal court that Act 330 had previously granted.

The present version of Article III, Section 35, provides that suits "authorized under this constitutional provision" shall be instituted only in Louisiana state courts.[5] In answer to the contention that this provision prevents the federal courts from hearing tax refund suits, the Company argues that suits brought under Act 330 are independent of Article III, Section 35. The Company's contention derives support from the explicit exemption of taxpayers' suits from legislation designed to implement the constitutional provision. Act 27 of 1960. Moreover, federal courts have accepted jurisdiction of tax refund suits under Act 330 in cases that arose after the 1946 amendment,[6] the first law to include language restricting suits against the state to Louisiana courts.[7] And in 1959 the Louisiana Supreme Court declared that such suits may be brought in federal courts.[8] In none of these cases, however, was the issue of federal jurisdiction raised; the parties simply assumed that restrictions in Article III, Section 35, had no effect on Act 330. The legislature acted on a similar assumption in 1950 when it incorporated Act 330 in full in the Louisiana Revised Statutes. The revision corrects incongruities and excludes obsolete laws. Act 42 of 1942. See also "Report to Accompany the 'Projet of Louisiana Revised Statutes of 1950'", 1 LSA p. 5.

The amended version of Article III, Section 35, if applicable to tax refund suits, would not only withdraw Louisiana's consent to suit in a federal court; it would also affect the procedure for satisfaction of a judgment in favor of a taxpayer. Act 330 requires the Collector to segregate taxes paid under protest and repay them, with interest, if the taxpayer prevails in a suit for a refund; Article III, Section 35, forbids satisfaction of any judgment against the state except by a legislative appropriation made subsequent to the judgment. Although the present case does not directly involve the procedure for satisfaction of taxpayers' judgments, this second conflict sheds light on the basic issue whether the amendments of 1946 and 1960 should be read to alter Act 330.

If Article III, Section 35, applied to suits to recover taxes unlawfully assessed, legislative appropriations would now be necessary to satisfy judgments in favor of taxpayers successfully challenging a Louisiana tax. Before Act 330, the Louisiana statute relating to reimbursement of unconstitutional taxes paid under protest required such appropriations. Act 16 of 1934, amended by Act 23 of 1935. Because this requirement deprived protesting taxpayers of an adequate remedy at law, a federal court in Texas Co. v. Wilkinson, E.D.La., 1937, 21 F.Supp. 771, issued an interlocutory

---

5. The relevant portions of Article III, Section 35, as amended in 1960, provide:
   "The Legislature is empowered to waive * * * the immunity from suit and from liability of the state * * *; and each authorization by the Legislature for suit against the state * * *, heretofore and hereafter enacted or granted, shall be construed to be and shall be effective and valid for all purposes, as of and from the date thereof, as a waiver of the defendant's immunity both from suit and from liability. * * * No judgment against the state * * * shall be exigible, payable or paid except out of funds appropriated for payment thereof. * * * No suit authorized under this constitutional provision shall be instituted in any court other than a Louisiana State court. * * * "

6. E. g., Mississippi River Fuel Corp. v. Fontenot, 5 Cir., 1956, 234 F.2d 898; Superior Oil Co. v. Fontenot, 5 Cir., 1954, 213 F.2d 565.

7. The 1946 amendment restricted the state's consent to be sued in a federal court at least as fully as the 1960 amendment. The 1960 amendment explicitly limits to state courts only suits "authorized under this constitutional provision," but the 1946 amendment, literally read, so limited all suits against the state.

8. Willis v. Flournoy, 1959, 236 La. 983, 109 So.2d 490, 495.

injunction against the collection of a Louisiana tax. The legislature promptly enacted Act 330 to avoid the result in Wilkinson. See A. Sulka & Co. v. City of New Orleans, 1945, 208 La. 585, 23 So.2d 224.

■ Act 330 forbids Louisiana courts from enjoining the collection of state taxes, and no subsequent legislation, including the constitutional amendments of 1946 and 1960, is inconsistent with this provision. If the amendments to Article III, Section 35, do not affect Act 330, federal courts are similarly powerless to enjoin state taxes, because Act 330 gives the taxpayer an adequate state remedy.[9] If, however, the amendments apply to taxpayers' suits, they have restored the defect that Act 330 was designed to cure and have made federal courts again available to enjoin the collection of unconstitutional taxes. The taxpayer may seek an injunction even though the amendments also repeal the state's consent to be sued in a federal court; it is settled that a suit to enjoin the collection of unconstitutional taxes is an action against the tax collector as an individual and not against the state. Georgia R. R. & Banking Co. v. Redwine, 1952, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335; see Ex parte Young, 1908, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714.

■ The Louisiana Constitution instructs the legislature to "provide against the issuance of process to restrain the collection of any tax and [to provide] for the prompt recovery by every taxpayer of any illegal tax paid by him."[10] This constitutional provision was left intact in 1946 and 1960. In the face of this constitutional policy against actions to enjoin the collection of taxes, we cannot believe that the draftsmen of the 1946 and 1960 amendments intended to return to the situation antedating Act 330. Instead, we hold that taxpayers' suits are not subject to Article III, Section 35.[11]

■ The Collector asserts that Article III, Section 35, is the only section of the Louisiana Constitution that authorizes the legislature to waive the state's immunity from suit. Therefore, he says, the restriction to state courts of all suits "authorized under this constitutional provision" necessarily applies to the waiver of immunity in Act 330. This argument rests on the hypothesis that the legislature is powerless to waive the state's immunity from suit in the absence of an affirmative constitutional authorization. Since the state's immunity does not derive from the Louisiana Constitution, the argument is without merit. As the Louisiana courts have frequently pointed out, the legislature may act in all matters that the Consti-

9. 28 U.S.C.A. § 1341 provides, "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

10. Article X, Section 18.

11. The history of the 1946 and 1960 amendments does not conflict with the result we reach; the parties agree that the principal purpose of both amendments related to non-tax claims against the state.

The original version of Article III, Section 35, required the legislature to specify the effect of any judgment subsequently rendered at the time it authorized a suit against the state. This provision proved unworkable because it compelled the state "to sign a blank check at the time suit was authorized, without knowing either the amount or the date it would be payable." The legislature suggested the 1946 amendment primarily as a remedy for this situation. McMahon & Miller, "The Crain Myth—A Criticism of the Duree and Stephens Cases," 20 La.L.Rev. 449, 454-55 (1960). This objection could not apply to tax-refund suits, however, since Act 330 did not require prior legislative appropriations to satisfy judgments in these cases; successful taxpayers were simply repaid from tax funds the Collector had segregated.

tution does not prohibit.[12] No Louisiana Constitution prior to that of 1898 contained a provision relating to suits against the state, yet in 1890 the Louisiana Supreme Court recognized the legislature's power to authorize such suits and said that legislative authorizations had been "of common occurrence." Carter v. State, 1890, 42 La.Ann. 927, 8 So. 836. See also Hood v. State, 1908, 120 La. 806, 45 So. 733; Durbridge v. State, 1906, 117 La. 841, 42 So. 337, 339.[13]

■ Even if constitutional authorization were necessary, a provision other than Article III, Section 35, could justify Act 330. Article X, Section 18, by re-quiring the legislature to "provide * * for the prompt recovery by every taxpayer of any illegal tax paid by him", grants the legislature discretion in devising a remedy at law. Act 330 is entitled "AN ACT—To carry into effect Section 18, Article X of the Constitution of Louisiana * * *," and Louisiana courts have consistently considered the Act to be an implementation of Article X, Section 18, and not of Article III, Section 35.[14]

Finally, the Collector argues that Act 330 itself does not authorize this suit. He relies on United States v. Cocreham, E.D.La., 1965, 247 F.Supp. 731, where the district court, in dicta, declared that

---

12. Plebst v. Barnwell Drilling Co., 1963, 243 La. 874, 148 So.2d 584, 589; State v. Pete, 1944, 206 La. 1078, 20 So.2d 368, 371; Ricks v. Department of State Civil Serv., 1942, 200 La. 341, 8 So.2d 49, 62; Ward v. Leche, 1938, 189 La. 113, 179 So. 52, 54; State v. Cusimano, 1937, 187 La. 269, 174 So. 352, 355; State ex rel. Porterie v. Charity Hosp., 1935, 182 La. 268, 161 So. 606, 609; Ascension Red Cypress Co. v. New River Drainage Dist., 1932, 175 La. 300, 143 So. 270, 274; State v. Sharp, 1932, 174 La. 860, 141 So. 859, 860.

13. To support his contention that waiver of immunity must come from the Constitution, the Collector relies on Lewis v. State, 1945, 207 La. 194, 20 So.2d 917, 919, where the Louisiana Supreme Court said:

> "Prior to the adoption of the Constitution of 1898, it does not appear that there was any constitutional or statutory provision in this State permitting the waiver of the State's exemption from suit. By Article 192 of the Constitution of 1898, * * * the Legislature *was given the power* to authorize a suit against the State." (Emphasis supplied.)

While this quotation may arguably support the Collector's position, the court in *Lewis* was in no way concerned with whether the Louisiana legislature needed constitutional authority to authorize a suit against the state.

The Collector also argues that the language of the present Article III, Section 35, shows that the legislature is powerless to act apart from the constitutional provision. The section declares, "[T]he Legislature is empowered to waive * * * the immunity from suit and from liability of the state * * *." The use of the word "empowered" can be explained, however, by developments that occurred shortly before enactment of the 1960 amendments. While it did not suggest that constitutional authorization was necessary for suits against the state, the Louisiana Supreme Court held that the 1946 amendment *prohibited* the legislature from waiving the state's immunity from liability. Stephens v. Natchitoches Parish School Bd., 1959, 238 La. 388, 115 So.2d 793; Duree v. Maryland Cas. Co., 1959, 238 La. 166, 114 So.2d 594. The principal purpose of the 1960 amendment was to allow the legislature to waive the state's immunity from liability. See Fullilove v. United States Cas. Co., 2d Cir. La.App., 1961, 129 So.2d 816, cert. denied; McMahon & Miller, "The Crain Myth", supra note 11. Of course, a constitutional enactment abrogating a previous constitutional restriction is in one sense a grant of power to the legislature; this fact does not conflict with the accepted principle that the legislative power is plenary in the absence of any restriction. State Through Dept. of Highways v. Macaluso, 1958, 235 La. 1019, 106 So.2d 455, n. 1(a).

14. See Willis v. Flournoy, 1959, 236 La. 983, 109 So.2d 490, 493; Willis v. Flournoy, 1956, 231 La. 264, 91 So.2d 33, 36; Olan Mills, Inc., of Tenn. v. City of Bogalusa, 1954, 225 La. 648, 73 So.2d 791, 798 (opinion on rehearing); A. Sulka & Co. v. City of New Orleans, 1945, 208 La. 585, 23 So.2d 224, 227; Higgins, Inc. v. Walker, 1st Cir. La.App., 1961, 129 So.2d 840, 848, cert. denied. See also Great Lakes Dredge & Dock Co. v. Huffman, 1943, 319 U.S. 293, 296–297, 63 S.Ct. 1070, 87 L.Ed. 1407.

Act 330 does not authorize suits against the state by private litigants, but only by the United States. The conflict that the court perceived between Act 330 and the Louisiana Constitution compelled it to draw this conclusion:

"At first blush it would seem that [Act 330 and Article III, Section 35] * * * are in conflict in that the statute apparently allows a suit to be brought in either the State or Federal Court for recovery of taxes paid under protest, while the Constitution of the State of Louisiana prohibits a suit against the State of Louisiana. Actually, these two provisions are not in conflict because of the fact that the statutory provision affording a legal remedy gives a right of action in any 'state or federal court *having jurisdiction of the parties and the subject matter* * * *.' This provision is obviously included for the purpose of giving effect to well settled jurisprudence to the effect that under certain circumstances a state may be sued in a Federal Court even without its consent. Thus, it is well settled that the Federal District Court does have jurisdiction over a case brought by the United States against a state. * * * Also, it is well settled that in such a case, consent of the state is not required. * * * Thus no violence is done to [Act 330] * * * by holding that that statute does not give consent to Chrysler Corporation to maintain this action against the State of Louisiana in a Federal Court. The State of Louisiana is expressly prohibited from granting such authority to be sued in a Federal Court by the provisions of Article III, Section 35, of the Louisiana Constitution * * *." (Emphasis in original.)

Neither the language of Act 330 nor any previous decision supports the theory that the Act limits access to the federal courts to the United States. The language of Section 2(c) of the Act, which the district court may have overlooked in United States v. Cocreham, militates against this view. Section 2(c) provides:

"This Section shall be construed to provide a legal remedy in the State or federal courts, by action at law in case such taxes are claimed to be an unlawful burden upon interstate commerce, or the collection thereof, in violation of any Act of Congress or the United States Constitution, or the Constitution of the State of Louisiana, or in any case where jurisdiction is vested in any of the courts of the United States * * *."

If this section referred only to suits by the United States, it would be superfluous. As the court in United States v. Cocreham recognized, the United States may sue Louisiana in federal court without the state's consent. The court interpreted Act 330 to limit access to the federal courts to the United States only because of its view that if the Act allowed individuals to sue the state in federal court, it would conflict with Article III, Section 35. Our holding that the 1946 and 1960 amendments to this constitutional provision were not designed to affect Act 330 removes the need for this strained interpretation of the statute.

II.

Under Article I, Section 8, clause 17, of the United States Constitution, Congress has exclusive legislative jurisdiction over areas that the United States has acquired with the consent of the state in which the property is located.[15] The parties agree that Barksdale Air Force Base is a federal enclave subject to this constitutional provision. The second

15. "Section 8. Clause 17. The Congress shall have Power to exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings."

question that we must decide is whether the State of Louisiana may levy a severance tax on an event taking place within the federal area.

A. Resolution of this dispute requires a reconsideration of this court's decision in Mississippi River Fuel Corp. v. Fontenot, 1956, 234 F.2d 898. That case, involving the same parties now before the court, held that the Mississippi River Fuel Corporation's operations at Barksdale Field were not exempt from the Louisiana severance tax.[16] Since that decision, the United States Supreme Court has reviewed the problem of state taxation in federal enclaves. In Humble Pipe Line Co. v. Waggonner, 1964, 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed.2d 782, the Court held that the State of Louisiana could not levy an ad valorem tax on privately owned personal property located on Barksdale Field. In the light of the Humble decision, Mississippi River Fuel Corp. v. Fontenot cannot stand.

This court's decision in Mississippi River Fuel Corp. v. Fontenot rested on two alternate grounds: (1) A provision of the Company's contract with the federal government requiring the Company "to pay all taxes lawfully assessed and levied" compelled the Company to pay nondiscriminatory taxes that the State of Louisiana imposed; (2) The severance tax did not interfere with the exclusive jurisdiction of the United States, since the United States had never held title to the minerals severed.

The Supreme Court clearly rejected the first of these holdings in *Humble*. The Court held that "[a] contractual requirement to pay taxes lawfully owing, standing alone, cannot be read as manifesting a purpose of the Government to abandon exclusive jurisdiction over one of its important military enclaves." In the present case neither the district court nor the Collector sought to support the tax on the basis of the Company's contract with the Government.

The district court did reassert the view that Louisiana's severance tax is consistent with Congress' exclusive jurisdiction over Barksdale Field, but we consider that *Humble* also overruled this second ground of the 1956 *Mississippi River Fuel Corp*. decision. The *Humble* opinion was principally concerned with whether Congress had exclusive legislative jurisdiction over Barksdale Field or whether it held the base only in a proprietary capacity. After deciding that Congress had exclusive legislative power, the Supreme Court said, "When Congress has wished to allow a State to exercise jurisdiction to levy certain taxes within a federal enclave it has specifically so stated, as in the Buck Act, 4 U.S.C. §§ 104–110." The Court concluded therefore that the state's inability to tax, in the absence of authorization from Congress, followed automatically from a finding that property that the state sought to tax was located in an area under the exclusive jurisdiction of Congress. The Court thereby reaffirmed the long line of decisions that a state may not legislate for a federal enclave even if the legislation does not conflict with a regulation of Congress or interfere with a federal function or instrumentality.[17]

16. The earlier decision is not res judicata of the current controversy, because it dealt only with severance taxes levied prior to 1956. Under Louisiana law, each imposition of a tax may be the subject of a suit for refund regardless of the outcome of any prior suit. Hubert v. City of New Orleans, 1906, 116 La. 507, 40 So. 853.

17. E. g., Paul v. United States, 1962, 371 U.S. 245, 263–264, 83 S.Ct. 426, 9 L.Ed. 2d 292; James v. Dravo Contracting Co., 1937, 302 U.S. 134, 140, 58 S.Ct. 208, 82 L.Ed. 155; Standard Oil Co. v. People of State of California, 1934, 291 U.S. 242, 54 S.Ct. 381, 78 L.Ed. 775; Surplus Trading Co. v. Cook, 1930, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091; United States v. Unzeuta, 1930, 281 U.S. 138, 142, 50 S.Ct. 284, 74 L.Ed. 761; Fort Leavenworth R.R. v. Lowe, 1884, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264. See generally Report of Interdepartmental Committee for Study of Jurisdiction Over Federal Areas Within the States, Part II, Govt.Ptg.Office, 1957; Note, Federal Areas: The Confusion of a Jurisdictional-Geographic Dichotomy, 1952, 101 U.

■ In the present case, the district court, following this court's 1956 decision, emphasized that under Louisiana law oil and gas is not subject to ownership until it is reduced to possession; accordingly, the United States never held title to the oil and gas underlying Barksdale Field. Under *Humble*, however, this principle of Louisiana law does not help the Collector. The personal property that the Supreme Court held exempt from Louisiana's ad valorem tax in *Humble* had never belonged to the United States.[18]

■ The district court nevertheless concluded that *Humble* did not overrule *Mississippi River Fuel Corp. v. Fontenot*, because *Humble* involved an ad valorem

tax while the earlier decision, like the present case, involved a severance tax. While there are differences between the taxes involved, we think that *Humble* did not rest on the peculiar attributes of the ad valorem tax. It rested instead on the general principle that a state lacks authority to levy any tax in an area under the exclusive jurisdiction of the United States. Just as the state could not tax personal property located on Barksdale Field, it cannot impose a severance tax when the incidence of taxation, the severance of minerals from the soil, takes place on a federal enclave, outside the jurisdiction of the State of Louisiana.

B. The Collector argues that even apart from *Mississippi River Fuel Corp.*

of Pa.L.Rev. 124; Note, Land Under Exclusive Federal Jurisdiction: An Island Within a State, 1949, 58 Yale L.J. 1402.

The Collector nevertheless argues that the severance tax is consistent with the exclusive jurisdiction of the United States. He relies on S.R.A., Inc. v. State of Minnesota, 1945, 327 U.S. 558, 66 S. Ct. 749, 90 L.Ed. 851, and Howard v. Commissioners of Sinking Fund, 1953, 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617. *S.R.A.* concerned the validity of a state tax on land once subject to the exclusive jurisdiction of the United States. The Supreme Court upheld the tax, because the United States had relinquished its jurisdiction by selling the equitable ownership of the entire tract to a private company. In contrast, the United States has not surrendered its jurisdiction over any part of Barksdale Field, although it has leased the right to exploit parts of the enclave for oil and gas; it is settled that the United States retains exclusive legislative power over all of an area acquired with the state's consent, even though it allows a portion of the property to be used by private parties for nongovernmental purposes. Humble Pipe Line Co. v. Waggonner, supra; United States v. Unzeuta, supra; Arlington Hotel Co. v. Fant, 1929, 278 U.S. 439, 49 S.Ct. 227, 73 L.Ed. 447; Benson v. United States, 1892, 146 U.S. 325, 331, 13 S. Ct. 60, 36 L.Ed. 991. In *S.R.A.* the Supreme Court recognized that when exclusive jurisdiction is retained, state laws are ineffective to tax property within the federal enclave, 327 U.S. 562–563, 66 S. Ct. 749.

Nor does Howard v. Commissioners of Sinking Fund support the Collector's

position. The issue in *Howard* was whether the City of Louisville could impose a tax on activities within a federal enclave. The Supreme Court first decided that it was consistent with Congress' exclusive jurisdiction for the city to annex the federal area; a federal enclave remains a geographic part of the city, county, and state in which it is situated, and "[a] state may conform its municipal structures to its own plan" without interfering with Congress' exclusive jurisdiction within the federal area. 344 U.S. at 626–627, 73 S.Ct. at 467. The annexation of the enclave was significant because Congress, in the Buck Act, had granted to states and their subdivisions the right to levy an income tax within federal enclaves, 4 U.S.C.A. § 106(a), and the City of Louisville had imposed such a tax in enclaves located within its municipal boundaries. By holding that the State of Kentucky and its political subdivisions retained control over their own geographic boundaries *Howard* did not therefore imply that a state has legislative power within a federal enclave unless exercise of that power interferes with the federal government. The Supreme Court upheld the city's power to tax only because of express congressional authorization: The Court recognized that Congress alone had political control within the federal area.

18. It has long been settled that privately owned property located in a federal enclave is exempt from state taxation. E. g., Surplus Trading Co. v. Cook, supra, note 17; Fort Leavenworth R.R. v. Lowe, supra, note 17.

v. Fontenot, the Louisiana severance tax is enforcible because it antedated the acquisition of Barksdale Field by the United States. He cites James Stewart & Co. v. Sadrakula, 1939, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596, and Paul v. United States, 1962, 371 U.S. 245, 83 S. Ct. 426, 9 L.Ed.2d 292, in support of this position. In those cases, the Supreme Court applied to federal enclaves a rule of international law that when one sovereign takes over the territory of another, the municipal laws of the original government remain in effect until changed. This doctrine is consistent with exclusive federal jurisdiction, because the laws adopted become laws of the United States. James Stewart & Co. v. Sadrakula, supra; Mater v. Holley, 5 Cir., 1953, 200 F.2d 123.

In *Humble* the state argued that this doctrine should apply to tax laws in existence at the time of acquisition. It relied on the same cases that the Collector cites here. The Supreme Court did not consider explicitly the issue of residual jurisdiction, but its holding that Louisiana lacked the power to impose the ad valorem tax indicates that the doctrine of adoption does not apply to state tax laws.

The doctrine of residual jurisdiction has traditionally been limited to "laws which are intended for the protection of private rights," or "laws affecting the possession, use, and transfer of property, and designed to secure good order and peace in the community, and promote its health and prosperity." It has not applied to laws "in conflict with the political character [and] institutions * * * of the new government." Chicago, R. I. & P. Ry. v. McGlinn, 1884, 114 U.S. 542, 5 S.Ct. 1005, 29 L.Ed. 270. Blackstone defined a municipal law as "a rule of civil conduct prescribed by the Supreme power of a State, commanding what is right and prohibiting what is wrong." 1 Blackstone, Commentaries 44.

We consider that the doctrine of residual jurisdiction does not apply to state tax laws. Legislation that a former sovereign enacted to raise revenue for its own purposes is not the kind of law that a new government would adopt as a matter of comity in order to avoid a legislative vacuum in a newly-acquired area.[19]

C. Finally, the Collector contends that Congress, in the Buck Act,[20] retroceded to the State of Louisiana jurisdiction to levy the tax. The portion of the Buck Act on which the Collector relies provides that a state may levy an income tax in a federal enclave within the

19. James Stewart & Co. v. Sadrakula, supra, was a wrongful death action. The Supreme Court held that a state statute requiring contractors to plank floor beams for the protection of workmen remained in effect in a federal enclave after the United States had acquired jurisdiction. The Court pointed out that without the doctrine of residual jurisdiction an area subject to a jurisdictional transfer would be left without any developed legal system for the protection of private rights.

In Paul v. United States, supra, the Supreme Court quoted with approval the portion of *James Stewart & Co.* limiting the doctrine of residual jurisdiction to laws enacted for the protection of private interests. The Court then held that a California statute setting a minimum price for the sale of milk could apply to milk purchases on a federal enclave made from nonappropriated funds, if the price control law was in force when the United States acquired the federal area. While a minimum price law on milk might not traditionally have been considered a law "intended for the protection of private rights," it is closer to such a law than is a statute imposing taxes for the benefit of a state. In the absence of a contract with the federal government, the state is not obliged to provide the inhabitants of a federal enclave with the governmental services that it provides for its own citizens. Fort Leavenworth R.R. v. Lowe, 1884, 114 U. S. 525, 5 S.Ct. 995; Report of Interdepartmental Committee for Study of Jurisdiction Over Federal Areas Within the States, Part II, supra, note 16. The Collector cites no instance in which the doctrine of residual jurisdiction has been applied to tax laws. One state court has refused to so apply it. O'Pry Heating & Plumbing Co. v. State, 1941, 241 Ala. 507, 3 So.2d 316.

20. 4 U.S.C. §§ 104–110.

**940**

state to the same extent as if the area were not a federal enclave. 4 U.S.C.A. § 106. The Act defines "income tax" as "any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts." 4 U.S.C.A. § 110(c). The Louisiana severance tax is "levied upon all natural resources severed from the soil * * * including * * * minerals such as oil [and] gas * * *," LSA–R.S. 47:631, and is measured by the quantity of minerals severed, LSA–R.S. 47:633. Congress has authorized the states to impose an income tax on private persons in federal enclaves, but the Louisiana severance tax is simply not an income tax. We are not free to expand the technical and precise language that Congress has used.

The judgment is reversed.