The opinion of the court was delivered by
Blanchard, J.
Plaintiff sues as owner and holder of eight bonds *1214 of the State of Louisiana, each for one thousand dollars, issued by authority of Act SI of the General Assembly of the State, approved February 21, 1870.
William Hopkins Young intervened in the suit, alleging that he is the owner and holder of twenty-two bonds of the same series, each for the sum of one thousand dollars.
The bonds are all dated July 1, 1870, and were made payable to the New Orleans, Mobile & Chattanooga Railroad Company, or bearer, forty years from date, with interest coupons attached.
Both petitions aver that the bonds were issued for a valid consideration, after full compliance with all the conditions and requirements of Act 81 of 1870, and that they are constitutional, legal and valid obligations of the State.
The object of the suit is to compel the Board of Liquidation to exchange the bonds for consolidated bonds of the State under the terms of Act No. 8 of 1874. The allegation is made that the Board of Liquidation had been duly applied to for this purpose, but that the application to fund and exchange had been relused.
In the answer of defendant it is specially denied that the railroad, in aid of which the bonds were issued, was ever constructed as contemplated by the law. It is averred that the bonds declared on are questioned and doubtful as to their legality and validity; that they are unconstitutional, without valid consideration and not fundable under Act 3 of 1874 and the amendment thereto.
The case was tried on these issues, and there was judgment in favor of plaintiff and intervenor. It is this judgment we are called upon to review.
The State, by the Funding Act, approved January 24, 1874, declared its willingness to fund its outstanding obligations at sixty cents on the dollar, and organized the Board of Liquidation to carry into effect its provisions.
By Act No. 11 of the Extra Session of 1875, known as the Supplemental Funding Act, it prohibited the Board of Liquidation from issuing bonds in exchange for any outstanding obligations of the State, the legality or validity of which is questioned, until the same shall first, by final decree of this court, be declared legal and valid obligations of the State, contracted in strict conformity to law, not in violation of the Constitution of the State or of the United States, and for a valid consideration.
*1215 In reference to suits brought under the Supplemental Funding Act, this court, in the case of Lord Cecil et al. vs. Board of Liquidation, 30 An. 35, said:
“ It will be observed that the object of this and similar suits is not to obtain a judgment against the State for the amount of the bonds. The decree we are to render is assimilated to a special verdict of a jury, who had been charged to ascertain or find certain facts — i. e., do the bonds possess the requisites enumerated in the act of 1875, which it is essential they should have in order to justify the Board of Liquidation in funding them.”
The State can be sued only by its own consent, and it may, therefore, impose such limitations and restrictions on the right of suit as it pleases.
Hence, this court, in determining its powers and duties in cases against the State, must look to the act authorizing the same, in order to determine the scope and limitation of its power and jurisdiction. Outside of the act authorizing the suit, and beyond the limitations therein fixed, it is absolutely without authority to hear and determine; and must, therefore, confine its investigations within the limits and to the objects specified. Spencer, J., Concurring Opinion, 30 An. 46.
The bonds in controversy being questioned as to their validity, the Board of Liquidators declined to fund them.
Plaintiff, under the terms of both the original and supplemental funding acts, is authorized to apply to the courts for relief, and accordingly does so.
But the later act tells him that his bonds can not be funded until this court shall have investigated and decreed that the bonds are legal and valid obligations against the State, that they were not issued in violation of the Constitution, that they were issued in strict conformity to law, and that' they have a valid consideration. If they fail to pass muster in any one of these particulars this .court can not order their funding and exchange for consolidated bonds.
And the court must make this inquiry without regard to the ownership of the bonds. It must make it whether the bonds be in the hands of the original payees, or in those of innocent third holders for value before maturity.
The case can not be affected in the slightest degree by any equities which plaintiff and intervenor may lay claim to under the law gov *1216 erning negotiable instruments. That question was fully settled in Lord Cecil’s case, supra, and reaffirmed in Carver vs. Board, 35 An. 263, and in Adams vs. Board, 39 An. 690. In this view of the case, if the consideration of these bonds has failed so far as the original payees are concerned, it has failed equally with regard to all subsequent transferees; and if the consideration has failed, these bonds can not be held to be, in the language of the Supplemental Funding Act, “ legal and valid obligations against the State.”
The Attorney General insists that the bonds are stricken with unconstitutionality on two grounds:
1. Because at the time when they were actually issued the debt of the State had already reached the limit of twenty-five million dollars, beyond which, by the third amendment to the Constitution of 1868, it could not be extended.
2. Because Art. 114 of the Constitution of 1868 required the object or objects of every law to be expressed in its title, and the title of Act 31 of 1870 did not express any object to levy a tax, or to provide the ways or means to pay the debt therein authorized.
He also insists it is not shown by legal and competent evidence that the bonds were issued in strict conformity to law; that is to say, that all the conditions and requirements of Act 31 of 1870 were complied with, and that it was incumbent upon plaintiff to show this affirmatively, and he can not rely upon legal presumptions arising from the act of the State officials in issuing the bonds, etc.
In our view of the case it is not necessary to pass upon these defences. There is another decisive of the controversy, and that is that the consideration of these bonds has failed, and therefore they do not occupy before the court the status of “legal and valid obligations against the State.”
Section 7 of Act 31 of 1870, after reciting “ that in order to invite immigration to the State, extend the cultivation and increase the products of that part of its territory lying west of the Mississippi river, augment the commerce and growth of the city of New Orleans and promote the general prosperity of the people of the commonwealth, it is of vital importance that the railroad of the New Orleans, Mobile & Chattanooga Railroad Company be extended westerly from the city of New Orleans * * * to the city of Houston in Texas, and that the same be constructed and put in operation between said cities in the shortest practicable time, and to induce the said com *1217 pany to so extend its said railroad, and incur the inconvenience and increased cost of a speedy construction of the same, and to insure its-construction and opening for traffic between said cities within the time hereinafter specified,” declared that the State granted and would pay and deliver unto the said company the bonds of the State-to the amount of three million dollars, as follows: “ Seven hundred and fifty thousand dollars of bonds whenever the railroad was constructed from a point opposite New Orleans to Bayou Lafourche, at or-near Donaldsonville; another instalment of seven hundred and fifty thousand dollars of bonds when the road was completed from Bayou Lafourche to Vermilionville; a third instalment of seven hundred and fifty thousand dollars of bonds when the road was completed from Vermilionville to the Sabine river; and a fourth instalment of seven hundred and fifty thousand dollars of bonds when the road was completed from the Sabine river to the city of Houston.”
The section further provided that this grant of bonds is made upon the condition, and express agreement with the company, that the railroad was to be constructed from New Orleans to the Sabine-river and be opened for traffic within three years, and from the Sabine river to Houston within six months later; and that in the event the company failed to construct its road to the Sabine river-within the time fixed, it was to receive no further issue or instalment of bonds, and shall be bound to return to the Treasurer of the State, to be canceled, all bonds which shall have been issu'ed to it and which it still owned or held, and to account for and pay over into-the State Treasury all sums of money received for bonds sold or disposed of.
It was further provided that any failure to complete the railroad from the Sabine river to the city of Houston because- of difficulties and delays resulting from the failure to secure timely legislation from the State of Texas “shall not release the State from the obligation of the contract hereby entered into with said company or any part thereof, provided the said company shall construct the said railroad from the west bank of the Mississippi river opposite the city of New Orleans * * * to the Sabine river within the time and the-manner hereinabove specified.” Obviously, from this language, if the-road was constructed to the Sabine river within the specified time,, the State was to be considered released from the contract.
Undoubtedly, the motive of the Legislature in enacting the law- *1218 quoted was to secure the construction óf a line of communication by rail between New Orleans and Houston, and that the consideration of the grant of bonds, in whole or in part, was the construction of said line of railway to the Sabine river within three years. It is clear from the terms of the act that none of the instalments of bonds issued in aid of the road as its construction progressed was to be considered as having a sufficient consideration unless the road was completed to the Sabine river within the prescribed time. It was certainly the intention of the act that the consideration for which the bonds were to be issued was indivisible notwithstanding the bonds were to be issued in instalments as the work progressed. If the road should be completed to the Sabine river within three years, there was a valid consideration for the three instalments of bonds to be issued on the construction of the road up to that point. If the road was not completed to the Sabine river within the three years, the consideration of all the bonds, issued in instalments prior to its default, was to be considered as having failed. The building of the whole road to the Sabine river was to be the consideration for the whole amount of bonds authorized to that point, and the building of no part or section was intended to be the consideration for any part of the bonds. That was the declaration of the law, accepted and agreed to by the company.
Aftei- the enactment of the act of 1870, the New Orleans, Mobile ■& Chattanooga Railroad Company pushed forward the construction of its road to the Bayou Lafourche, and demanded and received the first instalment of seven hundred and fifty thousand dollars of bonds.
But there it stopped; not a rod further did it proceed with the construction of the road toward the Sabine river. It utterly defaulted on the remaining portions of the line.
After the close of the three years, in which the road was to be completed to the Sabine, the State brought suit against the •company to have its default judicially declared, and to recover back the bonds issued, or, if sold, the proceeds thei’eof. There was judgment in favor of the State, but'not one bond was ever returned and not one dollar of their proceeds was ever recovered. Indeed, prior to this suit by the State, this railroad corporation, its franchises, property, roadbed, rolling stock, etc., had been sold out at the suit •of other creditors in foreclosure of its first mortgage bonds.
*1219 The suit of the State aforesaid established the default of the railroad company and thereby ascertained judicially the failure of the ■consideration of the $750,000 of bonds issued to the company on the completion of its road to Bayou Lafourche. The bonds now declared on are a part of that issue. We have already shown that the fact that they are in the hands of third persons, for value before maturity, does not relieve them from the close scrutiny we must make to determine whether or not they are “ legal and valid obligations against the State,” bolstered up by a valid consideration. These bonds must be held as having been issued without a valid consideration. It will not do to say that being part of the instalment of bonds issued on the completion of the road to Bayou Lafourche, and the construction of that section having been timely and before the default of the company became actual or declared, therefore they were issued for a valid consideration.
The utmost that can be claimed for the bonds, on that account, is, that when issued they were invested with a conditional consideration. If the road were constructed to the Sabine river within three years this conditional, inchoate, incomplete consideration would ripen into a full and complete consideration.
If the company defaulted on the construction of its road to the Sabine, the consideration of the bonds would be stricken with failure and nullity ab initio.
Nor does the decision of this court in State ex rel. R. R. Co. vs. Auditor, 23 An. 622, relied on by plaintiff, weaken the force of this position.
That was an action of mandamus to compel the State Auditor and Treasurer to register the $750,000 of bonds issued to this railroad company. The court held that the bonds must be registered, that the act of February 21, 1870, evidenced a contract, between the State and the company, that the effect of the third amendment of the Constitution of 1868, forbidding increase of the State debt beyond $85,000,000, was not retroactive, and that the State had granted this aid to the railroad company before the adoption of this amendment. That case was decided in July, 1871. The railroad had been constructed to Bayou Lafourche, the first instalment of bonds, based on that' construction, had issued, and the company had not yet defaulted on the construction of the remainder of the road to the Sabine river. It still had more than twenty months of time remaining in *1220 which to meet its obligation in this regard. Non constat that it would not do so.
Consequently, the question of the failure or want of consideration of the bonds could not be raised and was not raised in the mandamus suit.
Plaintiff and intervenor urge that the Board of Liquidation has already passed upon the legality and validity of the series of bonds, of which those in controversy form part, by finding six hundred and eighty of the seven hundred .and fifty issued on the completion of the railroad to Bayou Lafourche, and that this decision of the board should stand as effective for the whole series.
It appears that from January 24, 1874, the date of approval of the original funding act, to May 17, 1875, the date of approval of the supplemental funding act, six hundred and eighty of this issue of bonds, out of the total of seven hundred and fifty, were funded and exchanged for consolidated bonds of the State. This left seventy of these bonds unaccounted for. The thirty bonds involved in this suit are part of this seventy. From the passage of the supplemental funding act of 1875 down to January 5, 1895, nearly twenty years, no part of the remaining seventy bonds was heard of in connection with an effort to fund the same. On the latter date, January 5, 1895, the eight bonds of plaintiff herein were presented to the board for funding, and on December 24, 1895, the twenty-two bonds of intervenor were presented. The first were rejected by the board May 8, 1895, and the latter February 5, 1896.
The dormant state in which these bonds were permitted so long to rest might fairly justify the inference that, after the passage of the supplemental funding act, requiring the close scrutiny by this court of obligations sought to be funded whose validity was questioned, the remaining bonds of the issue under consideration were not thought to be fundable.
Under the terms of the original funding act, the Board of Liquidation possessed much more enlarged powers in the matter of passing upon obligations for their funding vel non than they possessed after the passage of the supplemental funding act. Accordingly, the first funding board seems to have exercised its discretion of admitting to the benefits of the funding scheme all the bonds of the issue in question which were presented. The passage of the supplemental funding act, and later, the induction into office of a new Board of Liquidation, put a stop to this.
*1221 No bond of this issue has been funded since, and this is the first time any of these bonds have come before this court for its scrutiny and decree as to their legality and validity under the provisions of the act of 1875.
The contention that the Legislature in providing that if the rail - road company failed to complete its road by sections to the Sabine river within the time agreed on, no bond should be issued for the sections not seasonably completed and that the company should return the bonds already received and still held by it, and account for the proceeds of those sold, intended that the State should be held responsible to third holders of the bonds disposed of, may be correct; but that question is not now before us. It will be time enough to pass upon it when it is.
That issue could arise properly only in an action brought upon the bonds by the holders thereof against the State by its permission. Such is not the instant case. Here the only question is, are the bonds presented such as the State, through its Board of Liquidation, will exchange for consolidated bonds of the State — and the board can not pass favorably upon the application, these bonds being questioned — until this court decrees these bonds to be constitutional, to have been issued in strict conformity to law, and to possess a valid consideration. We have hereinbefore seen that the bonds declared on can not, in this proceeding, be held to have been issued for a valid consideration.
It is therefore ordered and decreed that the judgment appealed from be annulled, avoided and reversed, and that there be judgment for defendant rejecting the demands of the plaintiff and intervenor, with costs in both courts.
Nicholls, O. J., recused himself.
Breaux, J., takes no part.