273 So.2d 19 (1973)
BOARD OF COMMISSIONERS OF the PORT OF NEW ORLEANS, An Agency of the State of Louisiana
v.
SPLENDOUR SHIPPING & ENTERPRISES COMPANY, INC., et al.
No. 52156.
Supreme Court of Louisiana.
January 15, 1973.
Rehearing Denied February 19, 1973.
Chaffe, McCall, Phillips, Toler & Sarpy, Paul A. Nalty, Leon Sarpy, New Orleans, for plaintiff-applicant.
Deutsch, Kerrigan & Stiles, Cornelius G. Van Dalen, New Orleans, for defendants-respondents.
DIXON, Justice.
Writs were granted in this case to review the claim of the Board of Commissioners of the Port of New Orleans that it is immune from suit for damage resulting from tort.
The issue arose after the Board of Commissioners filed suit against Splendour Shipping & Enterprises Company, Inc. and others for damages to the Florida Avenue bridge, which spans the Inner Harbor Navigation Canal in the Port of New Orleans. Splendour's answer pleaded the contributory negligence of the Board of Commissioners because of its improper design and construction of the bridge and its appurtenances which allegedly constituted a hazard and obstruction to navigation within the channel of the Industrial Canal, which is open to interstate and foreign commerce. Splendour reconvened against *20 the Board of Commissioners for damages to its vessel.
The Board of Commissioners filed a pleading styled "Exception of No Right of Action," alleging that it is "an Agency of the State of Louisiana and was, and is, immune from suit in tort without the consent of the Legislature; that no such consent has been given . . ." Therefore, the Board of Commissioners prayed that the reconventional demand be dismissed. The exception was maintained and there was judgment dismissing the reconventional demand.
The Court of Appeal affirmed, holding that the Board of Commissioners, as an agency of the State of Louisiana, "enjoys immunity in tort." Board of Commissioners v. Splendour Shipping & Enterprises Company, Inc. et al., 255 So.2d 869.
Splendour argues that the Board is not the State, and therefore does not enjoy the State's immunity from suit in tort. If the issue were so simple, it would quickly dispose of the case. First, the applicability of the doctrine of sovereign immunity is not determined by the nominal party to the litigation.[1]
Second, in the prior cases in which this court has been obliged to consider the question, we have held that the Board of Commissioners is an agency of the State, and as such, immune from suit in tort.
Sovereign immunity from tort suits has not in the past been confined to the State, itself, but has been enjoyed by its agencies. The Board is a State agency carrying on a public businessthe operation of the Port of New Orleans. It is given the complete power to operate and regulate the port, wharves, landings, buildings, to expropriate, to legislate, to maintain a police force. R.S. 34:21-44. Its powers are derived from the legislature and the Constitution. It is not "the State of Louisiana," but is part of the State, and it is an agency of the State. Our problem is to determine if the sovereignty of the State clothes the Board with immunity from suit.
The first case squarely holding the Board to be an agency of the State and protected by sovereign immunity from suit in tort was Fouchaux v. Board of Commissioners, La.App., 186 So. 103; 193 La. 182, 190 So. 373. (The earlier cases of Barrett Manufacturing Company v. Board of Commissioners, 133 La. 1022, 63 So. 505; Lamport & Holt, Ltd. v. Board of Commissioners, 137 La. 784, 69 So. 174, stopped short of holding that the sovereign immunity of the State protected the Board).[2]
*21 When the Fouchaux case was reviewed in the Supreme Court, sovereign immunity was not mentioned; in fact, the implication to be drawn from the language of the opinion is that the Board may be subject to suit for damages, at least when the damages are suffered by a lessee because of the defective premises under lease from the Board.
However, any doubt created by the Supreme Court opinion in the Fouchaux case was dispelled in Miller v. Board of Commissioners, 199 La. 1071, 7 So.2d 355, which criticized the Supreme Court opinion in Fouchaux and specifically approved the rationale of the Court of Appeal Fouchaux opinion.
Splendour argues that the legislative history of the Board shows that it was intended to have the powers of a corporation to sue and be sued, and, therefore, under Hamilton v. City of Shreveport, 247 La. 784, 174 So.2d 529, the immunity from suit was waived.
Act 70 of 1896 created the Board of Commissioners of the Port of New Orleans. Section 2 of that act included this sentence: "They shall have and enjoy all the rights, powers and immunities incident to corporations." When the act was amended by Act 36 of 1900 and Act 14 of the Extra Session of 1915, the sentence was retained.
In 1950, the statutory material concerning the Board of Commissioners was included in R.S. 34:1 et seq. R.S. 34:21 enumerated some rights and powers of the Board, but omitted any reference to "all rights, powers and immunities incident to corporations." Splendour argues that at least until 1950 the Board had the power to sue and be sued as a corporation in Louisiana, and that the omission of the reference to rights and powers incident to corporations should not have resulted in a change in the substantive law.
This interpretation is plausible, but runs counter to a prior decision of this court. When Act 70 of 1896 became effective, Article 46 of the Louisiana Constitution of 1879 prohibited any local or special law creating corporations. The constitutionality of Act 70 of 1896 was attacked in an injunction suit decided in this court in 1896. The act was upheld; the court noted in the following language that the Board was not given the power to "plead and be impleaded," and was not a corporation:
"Generally, a corporation has succession in its corporate name. It may plead and be impleaded. It may hold and convey property. The board here is not invested with all these qualities, essential to the existence of a corporation. The act empowers this board to administer the public wharves of the port, and invests it with certain duties. The matter is, we think, one chiefly of administration. The legislature had the power to pass an act to administer the affairs of the public wharves and levees through agents. Having this power, it had the power to carry the legislative will into execution, through the intervention of a board of commissioners appointed for the purpose, without necessarily creating a corporation, within the inhibitory clause of the constitution. Though the board may possess some of the incidents of a corporation, it is not necessarily a corporation. The provisions of the act can only be regarded as regulations and agencies to be enforced by this board. It is given such authority as may be needful to that end. The members are agents acting together. This board is not a body corporate, with privileges and immunities such as public *22 corporations must have. The most that can be alleged is that the act authorizes the board to perform certain designated acts, which we must assume are in the interest and for the welfare of the state. The general acts and the general modes of creating corporations are not before us for consideration. We are only concerned with an act of public agency, passed for a special purpose. As such, we do not think that it should be adjudged a public corporation." (Emphasis added). Duffy et al. v. City of New Orleans et al., 49 La.Ann. 114, 21 So. 179 (1896). But see explanation in State v. Kohnke, 109 La. 838, 33 So. 793, 795.
As alternative arguments, Splendour urges that the dock board has waived its immunity by having constructed a bridge within the navigable waters of the United States and that sovereign immunity is unavailable in this case because it would conflict with the uniformity in application of the maritime laws of the United States. This case is presented to us on exceptions to a reconventional demand. We cannot gather from the well pleaded facts that the dock board has waived its immunity by the construction of the bridge here involved.
Splendour's reconventional demand does allege facts which bring the claim against the Board of Commissioners within admiralty and maritime law. 28 U.S.C. § 1333; 46 U.S.C. § 740; Trahan v. Gulf Crews, 260 La. 29, 255 So.2d 63. It alleged that its vessel was damaged in excess of $15,000 resulting from the faulty design and construction of the bridge, rendering it unsafe for ocean-going vessels navigating in interstate and foreign commerce within the channel of the canal in the Port of New Orleans. Splendour argues that the demand of the Board of Commissioners against Splendour, also a demand in admiralty, is subject to defenses not cognizable in Louisiana law, but sanctioned in maritime law, such as comparative negligence, mutual fault, major-minor fault and "both-to-blame" fault. Splendour contends that dismissing its reconventional demand deprives it of these defenses, available to it under maritime law. For example, if it is found that the accident occurred because of the mutual fault of both parties, the damages must be divided. That is, if the damages to the bridge are proved to be $25,000, as alleged in the petition, and the damages to the ship are proved to be $15,000, as alleged in the reconventional demand, and it is determined that the collision occurred because of mutual fault, then Splendour would be required to pay the Board of Commissioners $5,000, a sum equal to one-half of the difference between the damages suffered by the plaintiff and the defendant. Reynolds v. Vanderbilt (North Star), 106 U.S. 17, 1 S.Ct. 41, 27 L.Ed. 91; "The Law of Admiralty," Gilmore and Black, 1957, Chapter 7, p. 408.
We do not agree that sustaining the exception to the reconventional demand effectively deprives Splendour of any defense to the Board of Commissioners' action which may be available to it under admiralty and maritime law.
We do not consider that the dismissal of this reconventional demand strikes from the pleadings any allegations which might avail the defendant as an affirmative defense, or which might mitigate damages if the defendant is required to pay. Sustaining the exception to the reconventional demand in this admiralty case would only deny to the defendant the possibility of recovering a judgment against the Board of Commissioners. It would not prohibit the introduction of evidence to support a defense legally raised in the answer, including that portion of the answer which is considered the reconventional demand.
Each argument advanced by Splendour has been answered adversely to it either by prior Louisiana jurisprudence or by our failure to adopt its alternative contentions. There remains only the basic and fundamental question: should we continue to clothe the Board of Commissioners with *23 sovereign immunity against suit for damages caused by tort?
The doctrine of sovereign immunity in Louisiana did not have its origin in our State Constitution, but in the jurisprudence.
The first known Louisiana case exempting a governmental agency (the City of New Orleans) from liability for tort committed by its employees is Stewart v. City of New Orleans, 9 La.Ann. 461 (1854). The case was a minority opinion, and did not recite or refer to previous Louisiana cases which allowed recovery in tort from a municipality or governmental agency.
For example, in Johnson v. Municipality No. One, 5 La.Ann. 100 (1850), the Supreme Court adopted the opinion of the district court which began as follows: "The liability of municipal corporations for the acts of their agent is, as a general rule, too well settled at this day to be seriously questioned." Prior to 1854, municipalities and other governmental corporations were frequently held to be responsible for torts.
In 1846 this court affirmed a judgment against the City of Lafayette for the wrongful demolition of plaintiff's building in M'Gary v. President, etc. of City of Lafayette, 12 Rob. 668 and 4 La.Ann. 440.
In 1848 a police jury was held liable for negligent mismanagement of a drawbridge in Houston v. Police Jury of St. Martin, 3 La.Ann. 566. Again in 1850 in Mc-Laughlin v. Municipality No. Two, 5 La. Ann. 504, damages were allowed against the city. In Walling v. Shreveport, 5 La. Ann. 660 (1850), an award for damages to the plaintiff was affirmed.
So it was this court, after holding municipal corporations responsible for torts of their employees so often that it was "too well settled at this day to be seriously questioned" in 1850, reversed itself in 1854, citing only New York cases. Stewart v. City of New Orleans, supra.
An early discussion of the doctrine of sovereign immunity is found in Bass v. State, 34 La.Ann. 494 (1882), a case in which the State had given its consent to be sued. Blackstone's Commentaries were cited for the principle that a "private mischief is to be endured, rather than a public inconvenience . . ." Parallel language is found in Russell v. Men of Devon, 2 T.R. 667, 100 Eng.Rep. 359 (1788), a case generally recognized as establishing in the English common law the principle that governmental immunity from suit protects a county from a damage suit arising out of the disrepair of a bridge, which the men of the county were obligated to maintain. See, Pugh, Historical Approach to the Doctrine of Sovereign Immunity, 13 La.L. Rev. 476 (1953), for an exhaustive development of the doctrine in the United States.
The only constitutional provision sometimes referred to as one of the origins of the doctrine of sovereign immunity in the United States is the Eleventh Amendment to the United States Constitution. That amendment was proposed in 1794, and adopted in 1798. It did not refer to suits against a state by a citizen of that state, but was concerned only with suits against states by citizens of other states, or by foreign nationals.[3]
The amendment was adopted to overturn a decision of the United States Supreme Court in Chisholm v. Georgia, 2 Dall. 419, 2 U.S. 419, 1 L.Ed. 440 (1793), which had held that a state was subject to suit by a citizen of another state.
The first constitutional reference to limitation of the doctrine of sovereign immunity in Louisiana was more precisely a constitutional limitation upon the power of the State to waive its immunity to suit. Article *24 192 of the Louisiana Constitution of 1898. The article was carried over in Article 192 of the Louisiana Constitution of 1913.[4]
In Durbridge v. State, 117 La. 841, 42 So. 337 (1906), Article 192 of the Louisiana Constitution of 1898 was discussed:
"The right of the General Assembly to waive its right of exemption from suit, and to grant permission to sue, is not derived from article 192 of the Constitution of 1898. It antedated that Constitution. The article in question merely fixed certain features of the demand, and of the suit, and of the effect of the judgment when rendered."
The language from Durbridge v. State was quoted with approval in Hood v. State, 120 La. 806, 45 So. 733.
The 1921 Constitution, in Article 3, § 35, provided only:
"Whenever the Legislature shall authorize suit to be filed against the State, it shall provide a method of procedure and the effect of the judgments which may be rendered thereon."
In 1946 Article 3, § 35 was amended [5] to provide more detail for legislative authorization of suits against the State.
This court decided in Duree v. Maryland Casualty Company, 238 La. 166, 114 So.2d 594 (1959) and Stephens v. Natchitoches Parish School Board, 238 La. 388, 115 So. 2d 793 (1959), that under Article 3, § 35, as amended in 1946, a legislative authorization to sue the State or an agency of the State in tort constituted merely a waiver of immunity from suit, and did not waive governmental immunity from liability for tort.
In 1960 Article 3, § 35 was amended and included, for the first time in a constitution of Louisiana, words referring specifically to the State's immunity from suit or from liability:
"The Legislature is empowered to waive, by special or general laws or resolutions, the immunity from suit and from liability of the state, and of parishes, municipalities, political subdivisions, public boards, institutions, departments, commissions, districts, corporations, agencies and authorities and other public or governmental bodies; and each authorization by the Legislature for suit against the State or other such public body, heretofore and hereafter enacted or granted, shall be construed to be and shall be effective and valid for all purposes, as of and from the date thereof, as a waiver of the defendant's immunity both from suit and from liability."
Article 3, § 35 of the Louisiana Constitution as amended in 1960 was interpreted in Hamilton v. City of Shreveport, supra. This court held in that case that the provision that "each authorization by the Legislature for suit against the State or other *25 such public body, heretofore and hereafter enacted or granted, shall be construed to be ... a waiver of the defendant's immunity both from suit and from liability." Since the legislature had granted the City of Shreveport the power to sue and be sued, there was a waiver of whatever immunity the city enjoyed from suit and liability.
Other states in dealing with the problem of the immunity of the state from suit and liability have concluded, as we do, that the origin of the doctrine is judicial, and not constitutional. For a review of the action of other states, see Holytz v. Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618 (1962); Parish v. Pitts and the City of Little Rock, 244 Ark. 1239, 429 S.W.2d 45 (1968).
In state after state the doctrine of governmental immunity from tort liability is being abrogated by the courts. See, e. g., City of Fairbanks v. Schaible, 375 P.2d 201 (Alaska, 1964); Stone v. Arizona Highway Commission, 93 Ariz. 384, 381 P.2d 107 (1963); Parish v. Pitts, supra; Muskopf v. Corning Hospital District, 55 Cal. 2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961); Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla.1957); Smith v. State, 93 Idaho 795, 473 P.2d 937 (1970); Molitor v. Kaneland Community Unit District, 18 Ill.2d 11, 163 N.E.2d 89 (1959); Carroll v. Kittle, 203 Kan. 841, 457 P.2d 21 (1969); Haney v. City of Lexington, 386 S.W.2d 738 (Kentucky, 1964); Spanel v. Mounds View School District No. 621, 264 Minn. 279, 118 N.W.2d 795 (1962); Brown v. City of Omaha, 183 Neb. 430, 160 N.W. 2d 805 (1968); Rice v. Clark County, 79 Nev. 253, 382 P.2d 605 (1963); Willis v. Department of Conservation and Economic Development, 55 N.J. 534, 264 A.2d 34 (1970); Becker v. Beaudoin, 106 R.I. 562, 261 A.2d 896 (1970); Holytz v. Milwaukee, supra.
Hardly any legal doctrine has received more criticism in the United States than the doctrine of sovereign immunity. It is clear that fears of those who believed the doctrine necessary to existence of government were unfounded. No agency that we know of his been bankrupted by the torts of its employees nor submerged in litigation. The agencies function.
Those boards and agencies in Louisiana which have been made responsible for their torts have not been greatly impaired. The Department of Highways works. Saint v. Allen, 172 La. 350, 134 So. 246; Herrin v. Perry, 254 La. 933, 228 So.2d 649. Charity Hospital serves. White v. Charity Hospital of Louisiana in New Orleans, La.App., 239 So.2d 385. School boards run schools. Terrebonne Parish School Board v. St. Mary Parish School Board, 242 La. 667, 138 So.2d 104. The Sewerage and Water Board performs its function. State ex rel. Saunders v. Kohnke, 109 La. 838, 33 So. 793; Warfield v. Fink & McDaniel Plumbing and Heating, La.App., 203 So.2d 827. Shreveport is still a good place to live. Hamilton v. City of Shreveport, supra.
Considering the source of the doctrine and its history, there are three reasons which move us to withdraw from the Board the immunity with which the court has previously insulated it from tort suits. It is unfair. It tends toward governmental irresponsibility. It is an unnecessary exception to the policy of the State of Louisiana as expressed in two articles of our Constitution.
Here the Board sues, and when Splendour reconvenes on a claim arising from the same accident, the Board cries, "King's X! You can't sue me." Not even the Board claims that its immunity is fair and justonly legal and traditional. The injustice may not be shocking to lawyers, accustomed to the frequent forfeiture of private advantage for public good. But when an unfair doctrine does not function for the public good, but only for the administrative convenience of a State agency, the court should do whatever it can to infuse justice in the relationship between the State agency and the private person.
Governmental responsibility is needed more today than ever. There is hardly *26 any sector of private life and activity free from governmental intervention. The myriad State agencies and their employees almost defy inventory, to say nothing of control by the people whom they purport to serve. It has not been the policy of the legislature to permit employees of agencies to injure, intentionally or carelessly, private citizens. It is and should be the policy of the State, enforced through its courts, to require boards and agencies to act responsibly, or be subject to answer in court.
The 1960 amendment to Article 3, § 35 of the Louisiana Constitution of 1921 is a clear indication of the legislative policy. If any legislative authorization has ever been given for suit against any public body, it constitutes an effective waiver of immunity from suit and liability. It is now and has been since 1864 the policy of this State that "every person for injury done him . . . shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay." Louisiana Constitution, art. I, § 6; Louisiana Constitutions of 1864, art. 110; 1868, art. 10; 1879, art. 11; 1898, art. 6; 1913, art. 6.
For these reasons, Fouchaux v. Board of Commissioners, supra, and Miller v. Board of Commissioners, supra, are overruled. We hold that the Board of Commissioners of the Port of New Orleans, and other such boards and agencies, are not immune from suit for tort. The judgments of the Court of Appeal and the district court, dismissing defendant's reconventional demand, are reversed, and the case is remanded to the district court for further proceedings.
SUMMERS, J., dissents and assigns reasons.
McCALEB, J., concurs in the result only, assigning written reasons.
McCALEB, Justice (concurring).
Albeit I subscribe to the result herein, I think this Court is constitutionally forbidden to waive the State's or a State agency's immunity from suit. While it is true that the doctrine of immunity of State agencies from suits in tort stemmed originally from the jurisprudence and not from the State Constitution, this had not been the case since 1898. The immunity of the State (and State agencies) from suit by private parties without its consent has always been recognized as a fundamental doctrine of government in this country. Indeed, as stated by this Court in State ex rel Hart v. Burke, Treasurer et al., 33 La. Ann. 498 (1881), "The principle is of such antiquity that the memory of man runneth not to the contrary."
In keeping with this principle, the framers of our Constitution of 1898 accorded it full recognition by special provision in Section 192 thereof that the Legislature may waive the State's immunity from suit under specified procedures. In like manner, the Constitutions of 1913 and 1921, by Article 192 and Section 35 of Article 3 respectively, have again incorporated the principle into our basic law by providing "Whenever the Legislature shall authorize suit to be filed against the State * * *." Implicit in this provision, of course, is the recognition of the State's basic immunity from suit, and the delegation of the power of waiving such immunity to the Legislative department constitutionally withdraws from the judiciary any authority (previously asserted by it) to effect such a waiver as the majority has improperly assumed in this case.
Notwithstanding my belief that the Court has transgressed upon exclusive powers constitutionally vested in the Legislature, I am of the opinion that the result reached in this case is correct because the Board of Commissioners, as plaintiff in this suit against Splendour, has effected a waiver of its right to claim immunity from Splendour's reconventional demand which arises out of the same damage suit upon which plaintiff's claim is based. Such a demand, in my view, must be considered as an exception to the constitutional provision *27 requiring legislative action to effect a waiver for, whenever the public agency seeks redress in its own Courts, it would seem but just and meet to conclude that it necessarily waives its immunity from any claim of the defendant cognate with the main demand.
SUMMERS, Justice (dissenting).
Courts, all departments of the government and every person in the State are bound by the constitution. Upon this rock the State has been built. Graham v. Jones, 198 La. 507, 3 So.2d 761 (1941).
In 1960 the people of this State amended Article III, Section 35, of the Constitution restating its immunity from suit or from liability as follows:
The legislature is empowered to waive, by special or general laws or resolutions, the immunity from suit and from liability of the state, and of parishes, municipalities, political subdivisions, public boards, institutions, departments, commissions, districts, corporations, agencies and authorities and other public or governmental bodies; and each authorization by the Legislature for suit against the State or other such public body, heretofore and hereafter enacted or granted, shall be construed to be and shall be effective and valid for all purposes, as of and from the date thereof, as a waiver of the defendant's immunity both from suit and from liability.... (Emphasis added.)
Prior to the above amendment, the Article, as amended by Act 385 of 1946, pertinently provided:
Whenever the legislature shall authorize suit to be filed against the State it shall provide the method for citing the State therein and shall designate the court or courts in which the suit or suits authorized may be instituted and may waive any prescription which may have accrued in favor of the State against the claim or claims on which suit is so authorized. . . Except as otherwise specially provided in this section, the effect of any authorization by the Legislature for a suit against the State shall be nothing more than a waiver of the State's immunity from suit insofar as the suit so authorized is concerned. (Emphasis added.)
Before the 1946 amendment, as originally written in the Constitution of 1921, the section read: "Whenever the legislature shall authorize suit to be filed against the State, it shall provide a method of procedure and the effect of the judgments which may be rendered therein."
The Constitutions of 1898 and 1921 contained identical provisions, each designated as Article 192, setting forth in detail the procedure and the effect of any adjudication "Whenever the General Assembly shall authorize a suit against the State...."
Long prior to the appearance of this principle for the first time in our Constitution of 1898, Hamilton in Federalist No. 81 said:
It is in the nature of sovereignty not to be amenable to suit of an individual without its consent. This is the general sense and practice of mankind; and the exemption, as one of the attributes of sovereignty, is enjoyed by the government of every State of the Union.
And, as the Court said in Durbridge v. State, 117 La. 841, 42 So. 337 (1906):
.... The right of the General Assembly to waive its right of exemption from suit, and to grant permission to sue, is not derived from Article 192 of the Constitution of 1898. It antedated that Constitution. The article in question merely fixed certain features of the demand, and of the suit, and of the effect of the judgment when rendered....
In State ex rel. Hart v. Burke, 33 La. Ann. 498 (1881), the doctrine is reviewed *28 in detail with copious authority cited to support this statement: "When the judiciary department of the government was instituted to expound the law and to distribute justice among individuals, the State was not subjected to its authority."
As recently as 1966 a unanimous Court in Weinstein, Bronfin & Heller v. LeBlanc, 249 La. 936, 192 So.2d 130, approved the doctrine of sovereign immunity in these words:
Accordingly, we turn first to a determination of whether the State has waived its immunity from suit. It is a basic premise of this proposition that the State does enjoy immunity from suit and may not be sued without its consent. This principle derives from and is inherent in the most elementary concepts of governmental sovereignty; it is implicit in our constitution and has been repeatedly recognized by our courts.
Article Three, Section Thirty-five of the State Constitution empowers the State Legislature to waive this immunity from suit.
These authorities were cited to support the quoted rule in the LeBlanc case: Black, Constitutional Law § 11 (1927); 81 C.J.S. States § 214; Cooley, Constitutional Limitations, Vol. 1, p. 3 (1927); La.Const. art. 3, § 35 (1921); Cobb v. Louisiana Bd. of Institutions, 229 La. 1, 85 So.2d 10 (1956); Wright v. State Board of Liquidation, 49 La.Ann. 1213, 22 So. 361 (1897); Carter v. State, 49 La.Ann. 1487, 22 So. 400 (1897); State ex rel Hart v. Burke, 33 La.Ann. 498 (1881).
A general recognition of the concept of sovereign immunity of the states, and particularly Louisiana, has more recently been well stated by the Federal District Court in Southern Bridge Company v. Department of Highways, State of Louisiana, 319 F. Supp. 948 (E.D.La.1970), where the Court declared:
It is of course fundamental that the Eleventh Amendment to the United States Constitution precludes all suits in federal court by a citizen of one state against any of the several states themselves without the latter's express or implied consent thereto. C. Wright, Federal Courts, § 46, p. 175, n.6 (2d Ed. 1970). If any of the several states elects to waive its sovereign immunity and consent to being sued as such, it may limit or otherwise qualify such consent...." (Emphasis added.)
The existence and recognition of the doctrine of sovereign immunity is therefore elementary, fundamental and ancient; it has been implicitly stated in our constitution and often recognized and approved by this Court. The majority does not appear to contest this fact.
Notwithstanding that an implied waiver of this constitutional immunity from suit may properly have disposed of the controverted issue present for our consideration, the Court has embarked headlong into a project to abolish from the constitution a doctrine it finds to be "unfair". The question as the majority poses it is: "[S]hould we continue to clothe the Board of Commissioners with sovereign immunity against suit for damages caused by tort?"
In so doing the Court disregards another elementary and fundamental principle of Louisiana government. In this State, unlike the Federal structure in which Congress has only the power and authority conferred by the United States Constitution, Louisiana's Legislature is invested with all governmental and sovereign power and authority. The only limitations on this power and authority is that imposed by the people in the Constitution or by the United States Constitution. Russell v. McKeithen, 257 La. 225, 242 So.2d 229 (1970); State v. Cusimano, 187 La. 269, 174 So. 352 (1937); State ex rel Porterie v. Charity Hospital of Louisiana at New Orleans, 182 La. 268, 161 So. 606 (1935); Bozant v. Campbell, 9 Rob. 411 (La.1845). However, the United States Constitution does not impair the sovereign immunity of states from suit. To the contrary, that Constitution *29 protects the right, reserving to the individual states the regulation, extent and limitation of its sovereign immunity. U.S.Const. 11th Amend.
As we have seen, insofar as the State Constitution is concerned, not only is the Legislature's right to waive immunity from suit not abrogated, the right is, instead, implicitly recognized and approved, confirmed and strengthened. See La.Const. art. 3, § 35, supra. It follows, therefore, unless the State's sovereign immunity is waived by the Legislature, that immunity is retained. Surely, it is fundamental and elementary that "No one of these departments, nor any person or collection of persons holding office in one of them, shall exercise power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted." La.Const. art. 2 § 2. Strong language was used by this Court in State ex rel Bell v. Hufty, 11 La.Ann. 303 (1856), to set this idea straight:
... [I]f the power is expressly granted, we disclaim the right to limit or control it by considerations outside the Constitution. We are not the makers but the expounders merely of the paramount law. We cannot add one jot or tittle to its terms. We cannot, by glosses and interpretations, subtract one particle from its substance. It would be rebellious in a Judge to say that a plain and unqualified grant of power given by the Constitution to a particular department of the government was null, because he thought it was against "common right." And it would be an assumption of sovereign authority for the Judge to say: "I will construe, qualify and pare away this unqualified grant of power, so as to make it consort with my ideas of common right." See also Woodard v. Reily, 244 La. 337, 152 So.2d 41 (1963); State through Department of Highways v. Macaluso, 235 La. 1019, 106 So.2d 455 (1958); In re Diaz, 211 La. 1015, 31 So.2d 195 (1947); State v. Duhe, 201 La. 192, 9 So.2d 517 (1942).
We are not concerned here, therefore, with whether the State has sovereign immunity from suit, for it most certainly does, always has, and will continue to have under our present constitution, until it waives that right expressly or impliedly. The concern here is with this Court's assumption of the power and authority to waive the State's immunity from suit, a power not conferred upon it by the constitution, but conferred, instead, by fundamental principles of organized government and by Article III, Section 35 of the Constitution upon the Legislature.
Let it be noted that the Court bases its withdrawal of immunity from the Board upon its finding that "It is unfair. It tends toward governmental irresponsibility. It is an unnecessary exception to the policy of the State of Louisiana as expressed in two articles of the Constitution." Clearly the Court's authority is gained elsewhere than in the constitution, without which it has no authority. So long as we struggle to maintain a government of free men under laws of their own making, it has never been, and it will never be, the prerogative of the Court to determine the wisdom of constitutional enactments. It would seem unnecessary to point out that the constitution is the will of the people, the supreme authority of all government.
All government, of right, originates with the people, is founded on their will alone, and is instituted solely for the good of the whole. Its only legitimate end is to secure justice to all, preserve peace and promote the interest and happiness of the people. (La.Const. art. 1 § 1)
The Court has cast its weight against the authority of the constitution and the sovereignty of the State. It has exorcised from the constitution a doctrine implicit in our paramount law and repeatedly affirmed by this Court. It is an unmitigated assumption of power which does not exist and which the Court cannot enforce. At a time when the people are at work on a new *30 constitution, this case may well cause them to ponder upon the futility of the effort so long as this Court sits.
I dissent.
NOTES
[1] State ex rel. Hart v. Burke, 33 La.Ann. 498 (1881); see In the Matter of the State of New York, 256 U.S. 490, 500, 41 S.Ct. 588, 590, 65 L.Ed. 1057, 1062: "As to what is to be deemed a suit against a state, the early suggestion that the inhibition might be confined to those in which the state was a party to the record (Osborn v. Bank of United States, 9 Wheat. 738, 846, 850, 857, 22 U.S. 738, 6 L.Ed. 204, 229, 231, 232) has long since been abandoned, and it is now established that the question is to be determined not by the mere names of the titular parties, but by the essential nature and effect of the proceeding, as it appears from the entire record. (Louisiana v. Jumel, 107 U.S. 711, 719, 720, 723, 727, 728, 2 S.Ct. 128, 27 L.Ed. 448, 450, 454; Hagood v. Southern, 117 U.S. 52, 67, 6 S.Ct. 608, 29 L.Ed. 805, 810 et seq.; Re Ayers, 123 U.S. 443, 487-492, 8 S.Ct. 164, 31 L.Ed. 216, 223-225; Pennoyer v. McConnaughy, 140 U.S. 1, 10, 11 S.Ct. 699, 35 L.Ed. 363, 365 et seq.; Smith v. Reeves, 178 U.S. 436, 438-440, 20 S.Ct. 919, 44 L.Ed. 1140, 1142, 1143; Murray v. Wilson Distilling Co., 213 U.S. 151, 168-170, 29 S.Ct. 458, 53 L.Ed. 742, 750, 751; Lankford v. Platte Iron Works Co., 235 U.S. 461, 469, 35 S.Ct. 173, 59 L.Ed. 316, 318.)"
[2] The Barrett Manufacturing Company case dismissed a materialman's suit against the Board on the basis that the Board, as a State agency, had no funds of its own to meet a claim like the plaintiff's, since all its revenues and funds were dedicated to certain public uses.

In the Lamport & Holt, Ltd. case, a suit for damages to coffee stored in the Board's warehouse, the Supreme Court referred to the city court's holding that the Board was a State agency not liable to be sued in damages for tort, but affirmed the dismissal apparently because there would be no way to enforce a money judgment against the Board.
In the Fouchaux case it was argued that an amendment to the statutes governing the Board of Commissioners, Act 14 of the Extra Session of 1915, made it discretionary for the Board to fix such charges as it might deem necessary, thereby removing the basis for the decisions in the Barrett Manufacturing Company case and the Lamport & Holt, Ltd. case.
[3] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." (Amendment XI).
[4] "Whenever the General Assembly shall authorize a suit against the State it shall provide in the act authorizing the same, that such suit be instituted before the District Court at the State Capitol; that citation to answer such suit shall be served both upon the Governor and the Attorney-General; that the Supreme Court of the State shall have appellate jurisdiction in such suit, without regard to the amount involved; that the only object of such suit, and the only effect of the judgment therein, shall be a judicial interpretation of the legal rights of the parties for the consideration of the General Assembly in making appropriations; that the burden of proof shall rest upon the plaintiff or claimant to show that the claim sued upon is a legal and valid obligation of the State, incurred in strict conformity to law, not in violation of the Constitution of the State or of the United States, and for a valid consideration, and that all these things shall be affirmatively declared by the Supreme Court, before any judgment is recognized for any purpose against the State."
[5] For a history of the judicial and legislative turmoil that preceded the 1960 amendment, see McMahon and Miller, The Crane MythA Criticism of the Duree and Stephens Cases, 20 La.L.Rev. 449 (1960).